The State v. Folwell.

THE STATE OF KANSAS v. CARY FOLWELL AND JOS. WHITE.

1. EVIDENCE; *Admissibility; Effect of.* Testimony is admissible that tends directly to prove the defendants guilty of the crime charged, although it may also tend to prove a distinct felony, and thus prejudice the accused.

2. OPINIONS OF WITNESSES, *not Experts.* It is a general rule that witnesses (not experts) are not allowed to give their opinions to a jury, but there are many exceptions; and where, as in this case, the witness knew and had examined the wagon of the defendant, observed the peculiarities of its running gear, and had followed certain wagon-tracks, had measured them, and had noted many minute circumstances tending strongly to show that the tracks were made by defendant's wagon, it was not error for the court to refuse to rule out a statement of the witness, a part of which was, that in the opinion of the witness defendant's wagon made the tracks.

3. DECLARATIONS OF DEFENDANT; *Testimony not all Preserved.* Where the record does not show that the bill of exceptions contains all the evidence, this court cannot say, in the absence of any showing, that there was not evidence produced to the court that declarations made by the accused, while in custody, were voluntarily made.

*Appeal from Bourbon District Court.*

INFORMATION, charging defendants with grand larceny, in having stolen a "black horse, the property of J. P. McN., of the value of seventy-five dollars." Plea, not guilty. Trial at the December Term 1873, (C. O. F., judge *pro tem.*, presiding.) Verdict, guilty, and defendant *Folwell* was sentenced to imprisonment in the state prison for three years, and defendant *White* for seven years. Defendants appeal.

*A. H. Wilkinson,* and *W. J. Bawden,* for appellants:

1. The court permitted evidence to be submitted to the jury over the objection and exception of appellants, tending to show the commission of previous larcenies by them, damaging to the character of the appellants — they not having offered their character in evidence, and the presumption of law being that their character was good. In criminal charges the prisoner's character cannot be put in issue by the

8—14 KAS.

The State v. Folwell.

state, unless he opens the door by giving testimony to it. It is not a conclusion of law, that from his silence the jury are to believe he is a man of bad character. (7 Iredell, 251; 1 Denio, 282; 24 Wend., 520; 4 Ark., 56.) Upon a trial of an indictment or information for larceny, evidence of the commission of a separate and distinct larceny from that charged is inadmissible. 18 Ohio, 221; 1st Leigh, (Va.) 574; 6 Wis., 74; 42 Mo., 242; 2 Cushing, 590; 5 Humphrey, 9.

2. The evidence offered by the state must be confined to the issue. An inspection of the record of this case shows that this plain and unquestioned rule was repeatedly violated by the prosecution during the trial of this cause. The court permitted evidence to be given by the prosecution to the jury of matters entirely foreign to the issues joined, and highly prejudicial to the rights of the plaintiffs in error, over their objections and exceptions. As sustaining this view, see 8 Porter, (Ind.) 511; 26 Ala., 104; 5 Grat., 696; 2 Ohio St., 54; 15 N. H., 169; 28 Ala., 693; 3 Iowa, 410; 4 Kas., 296; Wharton's Crim. Law, § 647; 10 Ind., 106.

3. There was no evidence of the *corpus delicti*. The absence of such evidence was fatal to the state. We submit that a close inspection of the record, which contains the entire evidence in the case, fails to show any evidence whatever of the commission of the felony charged in the information herein by *any person*. For aught that appears by the evidence introduced by the state, the appellants are in the anomalous position of having been convicted of a crime which never was committed. The evidence presents no showing whatever of the possession by the appellants, or either of them, at any time, of the property alleged to have been feloniously taken. 1 Bishop Crim. Proc., §§ 500, 501, and note 2; 16 Wend., 53; 2 Parker's Cr. Rep., 14; 15 Wend., 153; Burrill on Cir. Ev., 678; 17 Ill., 426; 1 Greenl. Ev., § 247; 42 N. Y., 1.

4. The court erred in permitting the interrogatories of the juror Allen to the witness Randall. No inherent right exists

in a juror to question witnesses, and nothing is waived on the part of defendants in a criminal cause. Our position is, that the court had no discretionary power to allow the innovation of permitting a juror to ask the interrogatories in question, nor any others. They referred to matters tending to prove the commission of other and previous larcenies than the alleged offense for which appellants were being tried, and were for that reason incompetent and illegal. The rights of a defendant charged with crime should always be guarded most jealously by courts. No privilege or protection accorded to a defendant can be infringed upon, neither can they be waived by him; and when the supreme court, in view of this principle, has held it to be fatal error, after conviction, for the judge before rendering sentence to omit asking the defendant "if he has any legal cause to show why the sentence of the law should not be passed upon him," holding this to be one of the inalienable rights of a defendant charged with crime, we claim that by a parity of reasoning the error set forth in this paragraph must still more forcibly commend itself to the reviewing court. The answering of the questions operated gravely to the prejudice of appellants, and had a direct effect to prevent that "fair and impartial trial" which was the right of the appellants, guaranteed them by the constitution of the state, and of which they could not be deprived.

5. Another error, to which we specially call attention is, the repeated admission by the court below, over the objections and exceptions of appellants, of the opinions of witnesses. The principle that witnesses cannot testify as to their opinions, except when testifying as experts, is too well known and universally admitted to require argument; and a scrutiny of the evidence will clearly establish the fact that this well-recognized principle of law was repeatedly ignored on the trial of this cause in the court below.

6. Declarations of the accused, made while in custody, are presumed to be involuntary, and as such are not admissible, unless it first be clearly shown that they were voluntary. The court below erred in admitting the declarations of appel-

lants to be given in evidence, said declarations being made while they were in custody and it not being shown that they were voluntary.

The opinion of the court was delivered by

KINGMAN, C. J.: The appellants were charged with grand larceny, committed in Bourbon county on the 18th of September 1873, and tried and convicted of the offense. They claim that certain errors occurred on the trial. The first is, that there was no proof of the *corpus delicti*, and therefore a new trial should have been granted. There can be no doubt as to the law; but a careful scrutiny of the record has satisfied us that the proof on this point is satisfactory. The owner of the horse placed him in the stable of a neighbor with whom he was staying that night, and near the door deposited his saddle and blanket. In the morning the horse was gone, and the owner has never seen him since. If it be said that the horse might have escaped, the answer is, that the saddle and blanket were also gone; and almost every fact that was in evidence tended to prove that the horse was stolen. It was in evidence that the accused, on the day and night after the horse was taken, went northward with the team and wagon of Folwell, one of the accused; that there were three horse-tracks northward, twenty miles, while Folwell drove but two; that a couple of men with a span of horses and a wagon, with a led horse, were seen stopping 150 yards from the road the accused traveled; that the team, wagon and horses corresponded with that of the accused, and so did the led horse with the horse alleged to be stolen, a similar team, wagon, harness, with a led horse of the same color and size of the one missing, passed through Osage the afternoon of the 19th of September; and many other minute facts, all tended to show that the missing horse was stolen. Taken altogether, the testimony is so convincing that we do not see any ground on which the claim of the appellants on this point can rest.

The other errors alleged are the admission of improper

*Larceny. Facts tending to prove the corpus delicti.*

evidence. The first is, the admission of evidence tending to prove another larceny. The facts are substantially as follows: The state was trying to prove the whereabouts of the accused on the 19th of September, to connect them with the loss of the missing horse. The evidence had tended to show that they had gone north as far at least as Prescott, twenty miles, and that on the way up the tracks showed three horses, and on the return two horses. Every fact that in any way tended to show that the wagon of the accused made those tracks and that the defendants were with the wagon, was important and relevant. The witness had already testified that he had examined the wagon of defendants, and described it, pointing out peculiarities of its running, and had measured the track near where he lived, and that the "doubletrees on defendant's wagon, as he saw it on September 20th, were the property of witness." He was then allowed to testify that he left this property in the road five-and-one-half miles north of Fort Scott, on the Barnesville road, and next saw it the next day on defendant's wagon at Fort Scott. It is true, that this evidence tended to prove a distinct felony, and it will readily be seen that it was likely to injure the defendants; but the testimony was essential to show the guilt of defendants on the charge then being tried, and it would be a singular rule of law, that a person accused of a grave crime could compel the exclusion of important and relevant testimony merely by committing two felonies at the same time, or so nearly and intimately connected that the one could not be proven without also proving the other. The testimony was competent, not for the purpose of proving another felony, but as tending to show the guilt of the accused in this case. The authorities are not conflicting on this point. (Wharton Crim. Law, § 649.) This testimony, relevant and proper in itself, was elicited by two questions propounded by a juror; and this asking questions by a juror is alleged as error by the counsel for appellants, who have apparently overlooked the fact that it was done by their own consent, as shown by the record.

*1. Admissibility of evidence of one offense, where it also proves another offense.*

It is insisted that witnesses were allowed to give their opinions without having shown themselves competent; and two instances are pointed out. In the testimony of Randall, it was on cross-examination by defendants that the testimony was brought out, and no exception taken in any way thereto. In Avery's testimony, the witness stated that in his opinion the defendant Folwell's wagon made the track that was followed. This testimony the defendants moved to have struck out, which the court refused to do. It is very evident that the testimony could have had little or no weight with the jury; still it may possibly have had enough to make it necessary to examine the question raised. It is true, as a general rule, that witnesses are not allowed to give their opinions to a jury, but there are exceptions. In many cases they are the best evidence of which the nature of the case will admit, cases where nothing more exact than an opinion can be obtained. Duration, distance, dimension, velocity, etc., are often to be proved only by the opinion of witnesses, depending as they do on many minute circumstances which cannot fully be detailed by witnesses. (See note in case of *Poole v. Richardson*, 3 Mass., 330.) Questions of science, skill, or judgment, are also of this description. And where, as in this case, the witness knew the wagon of Folwell, the peculiarity of its construction, and that one wheel was dished, the whole wagon making a much narrower track than common, and the dished wheel making besides a very irregular track, and where he also testifies that he has followed the track for miles, noticing its peculiarities and measuring its width, we do not think it was error to permit his opinion to go to the jury, who, having a knowledge of its groundwork, can judge of its value. The question was not one of science, nor was the witness an expert. After giving the facts he gives only the conclusion he deduced from them; and as it was the same that the jury must have drawn from the same facts, we cannot say there was error therein. (1 Wharton's Crim. Law, § 45.)

Another alleged error is, that the court admitted the dec-

2. Opinions of witnesses, not experts.

larations of appellants to be given in evidence, said declara-
3. Declarations tions being made while they were in custody, and
of accused. it not being first shown that they were voluntary.
It is not necessary to examine the law on this question, for
the facts are not such as to demand it. The record does not
state that all the evidence is in the bill of exceptions; and as
the testimony to show that the declarations were voluntarily
made is for the judge only, to enable him to determine
whether the declaration was a voluntary one, we cannot say
that such testimony was not given. It is alleged that the
evidence was not confined to the issue, and that the rule
requiring it to be so limited was repeatedly violated; but no
specific instance is pointed out, and we think none exists.
Upon a careful consideration of the whole case, we perceive
no error that would justify us in reversing the judgment.

All the Justices concurring.