THE STATE OF ·KANSAS, *Appellee,* v. CLYDE HETRICK, *Appellant.*

No. 17,216.

SYLLABUS BY THE COURT.

1. EVIDENCE—*Motive for Paying Money Obtained by False Pretenses.* In a trial for obtaining money by false pretenses it is competent to prove by the direct testimony of a prosecuting witness that he would not have parted with money if he had not believed the representations.

2. ———— *Similar Offenses—Identity or Intention of Defendant.* In a prosecution for obtaining money by false pretenses evidence tending to prove that the defendant made other pretenses about the same time of like character to those charged in the information is admissible when it tends to prove identity or intention in the issue on trial.

3. ———— *False Pretenses—Allegations and Proof.* It is not necessary to prove the falsity of all the representations alleged in an information for obtaining money by false pretenses; proof of one or more which are within the statute and which induced the payment is sufficient.

Appeal from Osage district court. Opinion filed February 11, 1911. Affirmed.

STATEMENT.

THE defendant was convicted of obtaining money from the Kansas State Bank of Overbrook by false pretenses. The information charged that the defendant falsely pretended:

"That he was one A. C. Cotes, and that he was the

payee named in a certain bank check which he then and there had in his possession, and which check said Clyde Hetrick then and there falsely pretended was genuine."

A copy of the check was set out, with the usual averments charging the offense.

The state produced evidence tending to prove the following facts: That on the 29th day of September, 1909, the defendant presented to the Kansas State Bank of Overbrook a check drawn upon that bank, signed by J. M. Eagon, payable to the order of A. C. Cotes, and indorsed with the name A. C. Cotes. Eagon was a local hog buyer who transacted business with the bank. The cashier addressed the defendant as "Mr. Cotes," and said, "You are a stranger here, are you not?" He answered, "Yes." The cashier paid the check, not knowing the man who presented it but supposing him to be A. C. Cotes, the payee. The money having been paid, the defendant presented another check, the one described in the information, purporting to have been drawn on the Citizens' State Bank of Pomona by J. Baldwin for $250, payable to A. C. Cotes or bearer, and asked that it be cashed. The cashier made some objections to paying this check, but the defendant said that he needed $175 right away, and upon his indorsing the name A. C. Cotes on the back of it the cashier paid to him $93.38, which, with $81.62, the amount of the first check, made up the $175, and the cashier then gave to the defendant a certificate of deposit for the balance, amounting to $156.62. Soon afterward the defendant presented, at the First National Bank in the same town, a check purporting to have been drawn by I. Baxter on the People's State Bank of Michigan Valley, for $180, payable to John Davis or order. The cashier at that bank inquired, "You are John Davis?" The defendant answered, "Yes," and, the check being handed to him for indorsement, wrote that name upon the back of it. Thereupon

the cashier gave him a certificate of deposit for a part of the amount. These transactions occurred at the noon hour, and the only persons present were the defendant and the cashier at each bank. On the same day, about four o'clock in the afternoon, the two certificates of deposit were found by the roadside, lying or folded together. This was on the road between Overbrook and the defendant's home, which was about nine miles distant. Three days afterward the two cashiers called at the defendant's home and inquired of him the way to Michigan Valley and to Pomona, and passed on to the home of a neighbor, where they inquired whether Clyde Hetrick lived at the house they had just visited and were told that he did. They were also informed that Hetrick had taken hogs to Overbrook on the day in question. They then returned to Hetrick's home, and asked him if he was Clyde Hetrick, and if he had taken hogs to Overbrook on the day referred to. He answered both questions in the affirmative. They then inquired if he had sold them to Eagon and he answered, "No." They inquired the name of the purchaser, and he said he did not know. They then showed him one of the checks, and asked him to write his name and certain letters and figures on an envelope, which he proceeded to do. They then asked him to go to Michigan Valley and straighten up the matter. He said that he had nothing to settle and if they were looking for the person who had worked a check on them they had come to the wrong place, and refused to go. Each of the cashiers identified the defendant as the man who had presented the checks referred to, although he was a stranger to both when the checks were presented.

The defendant testified that about nine months previous to the date of these transactions he had sold hogs to Mr. Eagon, taking a check therefor payable to C. E. Hetrick, which had been paid at the state bank; that he became acquainted with the cashier of the state

bank twelve or fifteen years ago, and knew him when he saw him; that he was acquainted with the cashier of the national bank and had arranged with him for an extension of time upon a note payable at that bank; that he had been in Overbrook frequently, and especially in the last three or four years; that his mother and brother were depositors in the state bank; that he did not present either of the checks referred to, and was not in either bank on the 29th day of September, 1909, the day upon which they were presented. He testified that he took four hogs to Overbrook on the morning of the 29th of September, and sold them to a stranger whom he met near the depot, received $95 in cash for them, and transferred them from his wagon to the wagon of the purchaser, then standing in the street, and that the hogs were weighed on the scales at a lumber yard by himself and the purchaser, in the absence of the owner or any other person. He said that he took dinner in town, and told of business places that he had visited before he started for home, about one o'clock, and said that he had never seen or heard of the purchaser of the hogs since the sale, although he had caused search and inquiry to be made.

The defendant is a farmer, twenty-nine years of age, and has lived all his life in the vicinity of Michigan Valley and Overbrook. He owns twenty acres of land, which he cultivates together with other rented land, and also owns farming implements and live stock. The check set out in the information was not paid, although duly presented at the bank upon which it was drawn, and the $93.38 paid upon it by the state bank has not been repaid. Inquiries have been made for a man by the name of A. C. Cotes, but no such person has been found nor heard of.

*W. S. Jenks,* and *F. M. Harris,* for appellant.

*Fred S. Jackson,* attorney-general, *John Marshall,* assistant attorney-general, *Charles D. Shukers,* special

assistant attorney-general, and *A. B. Crum,* county at-
torney, for the appellee. .

The opinion of the court was delivered by

BENSON, J.: Errors are assigned relating to the ad-
mission of testimony and the instructions, and in sus-
taining the verdict upon the evidence.

The alleged insufficiency of the evidence relates to
the question of identity. In the brief for the defend-
ant it is said: "The defense was simply that the de-
fendant was not the right man; that if someone had
defrauded the banks it was not Clyde Hetrick." The
fact that he had lived all his life in the neighborhood
and was in no financial straits, that he had been at
Overbrook frequently and would likely be recognized
at the banks, that the cashiers appeared to be so un-
certain that they inquired of a neighbor of the de-
fendant whether his name was Clyde Hetrick, and
other circumstances, together with the ingenious na-
ture of the scheme, as unfolded by the state, are
urgently. insisted upon as reasons why the positive
testimony of the cashier of the state bank that the
defendant was the man who presented the checks and
obtained the money under the name of A. C. Cotes
should not be believed. All these matters were before
the jury, and doubtless were also carefully considered
by the court on the motion for a new trial. This
court can only inquire whether there is competent
evidence, which, if believed, sustains the verdict.

"The credibility of witnesses and the weight of
their testimony, if competent, must rest with the jury
and the trial court." (*The State v. Plum,* 49 Kan. 679,
syl. ¶ 2.)

This rule is commonplace in the jurisdiction of this
state.

An alleged error in the admission of testimony is

11—84 KAN.

based upon an objection to the following question, propounded to the prosecuting witness:

"Would you have advanced him the $93 if you had not believed from your conversation with him that he was the A. C. Cotes named as payee in that check?"

The objection was that the question was "incompetent, irrelevant and assuming a fact not proven," and was overruled. The answer was in the negative. This ruling is complained of. The fact sought for was the state of mind, or motive, that induced the cashier to part with the money. The precise form of the question is not important, unless it is leading and suggestive. A condition or state of mind may be shown by the accompanying circumstances, it is true, but it may also be shown by the direct testimony of the person himself, under the rule stated in *Bice v. Rogers,* 52 Kan. 207, approved and followed in *The State v. Kirby,* 62 Kan. 436, viz.:

"It is now well settled that upon an issue of fact as to whether a transfer of property was made for the purpose of hindering, delaying or defrauding creditors, it is competent, where the one who transfers is a witness, to inquire of him whether in making the transfer he intended to hinder, delay or defraud his creditors." (*Bice v. Rogers,* 52 Kan. 207, 210.)

"The prosecutor, when examined as a witness, may testify that he believed the pretenses, and, confiding in their truth, was induced thereby to part with his money or property." (*In re Snyder, Petitioner, &c.,* 17 Kan. 542, syl. ¶ 2.)

It has been held proper, in an action for false representations, to inquire of a witness, "What induced you to sign the papers?" (*Knight v. Peacock,* 116 Mass. 362.) In another case of the same nature practically the same question was held admissible (*Charbonnel v. Seabury,* 23 R. I. 543), and in *Milwaukee R. M. Co. v. Hamacek,* 115 Wis. 422, the question, "Did you rely upon the representations?" was held to be proper. The rule and the reason upon which it is

founded are stated in section 581 of volume 1 of Wigmore on Evidence, and in section 170 of the second edition of Jones on Evidence. Among other illustrative cases are: *Armstrong v. People,* 70 N. Y. 38; *Ferguson v. State,* 71 Miss. 805; *Com., to use, v. Julius et al., Appellants,* 173 Pa. St. 322; *Brown v. State,* 127 Wis. 193.

Objection was also made to the testimony showing the transaction in the national bank. Counsel frankly say that evidence of statements to other persons similar to those upon which the money was obtained are competent, but that it was error to allow proof "of the fruits of such statements," viz., of the giving of a certificate of deposit by the other banker. This was admissible, in connection with the evidence that the two certificates were found by the roadside together on the same day and soon after they were obtained, as a circumstance tending to show that the same man made the representations at both banks. Proof of a collateral offense may be relevant in order to identify a defendant. (Whar. Cr. Ev., 8th ed., § 47.) It is relevant to show that the defendant has made similar pretenses at another time and place. (Jones, Ev., 2d ed., § 146.) Facts relevant to the issue are not excluded merely because they tend to prove another offense. (*The State v. Adams,* 20 Kan. 311; *The State v. Franklin,* 69 Kan. 798; *The State v. Cooper,* 83 Kan. 385.) The admission of the evidence did not conflict with the familiar rule that proof of another crime having no connection with the one for which the accused is being tried is inadmissible.

It is also insisted that the cross-examination of a witness for the state was too strictly limited, but this objection appears to be without merit.

Complaint is made because the court, in instructing the jury concerning the proof of the falsity of the representations set out in the information, stated that it was sufficient if "said representations and pretenses.

or some one or more of them were untrue and false and known to be so by the defendant." This was said in immediate connection with a statement of the other elements of the crime, and the proof necessary to convict. The objection is to the use of the words "or some one or more of them," which, it is contended, makes the instruction erroneous. This contention can not be upheld. The proof of one pretense within the statute, operative in inducing the payment, was sufficient. (Whar. Cr. Ev., 8th ed., § 131.) The pretense which induced the payment need not be the sole inducement if it had a controlling influence. (*The State v. Briggs,* 74 Kan. 377.)

"It is sufficient if they [the false pretenses] are a part of the moving cause, and, without them, the defrauded party would not have parted with the property." (*In re Snyder, Petitioner, &c.,* 17 Kan. 542, syl. ¶ 3.)

The language complained of, in the connection in which it was used, and as a part of the entire charge, was not misleading or erroneous.

Upon the whole record we find no error, and the judgment is affirmed.