THE STATE OF KANSAS, *Appellee,* v. FRANK WHEELER, *Appellant.*

No. 18,208.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Trial—Evidence of Unconnected Offenses by Other Parties—Error.* On a trial for one offense, evidence tending to prove other distinct unconnected offenses by other parties with whom it was not shown that the defendant had associated, conspired, or was in any way connected, is irrelevant.

2. —— *Same.* Evidence that a defendant in a criminal action had been arrested and given bail for another distinct offense not connected with the one for which he is on trial, and that other persons, with whom it was not shown that he had conspired, associated, aided or been connected with, have been convicted of such other offenses, is irrelevant.

3. —— *Same.* In the light of the circumstances stated in the opinion it is held that the admission of the irrelevant testimony referred to in the above first and second paragraphs was prejudicial error.

Appeal from Washington district court. Opinion filed March 8, 1913. Reversed.

*Edgar Bennett,* of Washington, for the appellant.

*John S. Dawson,* attorney-general, *S. N. Hawkes,* assistant attorney-general, and *J. R. Hyland,* county attorney, for the appellee.

The opinion of the court was delivered by

BENSON, J.: The defendant appeals from a conviction for burglary and larceny.

About 2 o'clock on the morning of December 3, 1910, the Taft State Bank at Hanover, in Washington county, was broken into and over $4000 in money was stolen from its safe. Several explosions were heard, and four men were seen standing outside the bank building. A citizen approaching the building inquired what was going on, and one of the men answered, "we are rob-

bing this bank, and if· you don't go back I will kill you." After the robbers had left, the· vault and safe were found blown open and the money gone. The front door appeared to have been pried open.. About forty minutes before the explosion an automobile carrying five men was noticed coming from the south; going in the direction of a bridge about a half mile north and west of the bank, outside of the town. At daylight the sheriff and his assistants found automobile tracks indicating that the car had been turned out of the road near this bridge, and back into the road again, the tracks leading north. These tracks were followed to Gerardy, where they turned east. The pursuers, however, proceeded north about five miles to Lanham, in Nebraska, where the tracks were again.seen and followed north to a point near Odell, where they turned east and were lost. The pursuers went on about fourteen miles to Wymore, which is thirty miles northeast of Hanover. The places mentioned are on the usual traveled road between Hanover and Wymore. After visiting Beatrice, the sheriff's party returned to Wymore. Leaving Wymore at 4 o'clock P. M., they proceeded a short distance, when their car became disabled. At their request, the defendant then took them in his automobile, a five-passenger touring car, to resume the journey. Owing to an apparent want of knowledge of the route taken, and accidents to the car, they were about four hours on the way, reaching Hanover at midnight. It appears that the defendant had formerly been engaged in the shop service of a railway company, later in conducting a clubhouse in Wymore, and for a short time before this occurrence had been running an automobile for hire. He did not appear to be skillful in managing the car. On the trip the defendant told the sheriff that he had been to Lincoln with a bunch of traveling men the night before.

Evidence was given tending to show that an auto-

11—89 KAN.

mobile carrying five men was seen coming from the
south on the road from Odell to Wymore about 5
o'clock on the morning of December 3, 1910, and that
the defendant was driving the car. The witness, stand-
ing at the roadside, recognizing Wheeler, said, "Hello,"
but received no response. The other occupants of the
car were not recognized by the witness. Another wit-
ness testified that he saw a dark-red car with five men
in it, driven by the defendant, pass a corner in Wymore
at 6 o'clock that morning, coming from the direction
of Odell, on the usual route. The witness recognized·
the defendant as the driver, but not positively. He
identified the other passengers in the car as Red Wat-
son, Frank Black, or "Blackie," Neil Mulcahy, and
Frank Jackson, or "Shorty." These four, with Dan
Carney, called "Crippled Dan," Crawford or Carlisle,
and others, called "Johnboys," associated together at
Henry Hoerr's house, where some of them boarded, and
at O'Donnell's saloon and other drinking resorts in
Wymore. After this burglary the four mentioned ap-
pear to have left Wymore and were not seen there
afterwards. The defendant, however, appears to have
remained, pursuing his accustomed business. The de-
fendant's car was seen on the morning of the same day,
December 3, standing in a garage next to the door
opening upon an alley. The direction that the car was
taking when seen at the corner was toward this alley.
The witness who saw the car pass the corner testified
that sometime afterwards he heard the defendant say
that he was in Hanover that night; that he had a bunch
of traveling men; and that he passed these yeggmen
on the road broken down. A tool house on the railway
near the bridge before referred to was broken into
that night, and a pick and track wrench taken from
this shop were found in the bank the morning of the
robbery.

The fact of the association together of the men
called "Johnboys" and by some yeggmen having been

shown, as already indicated, and also by other testimony, the state offered evidence showing that Henry Hoerr was seen afterwards in jail at Marysville, where he was confined on a charge of robbing the Beattie State Bank, on November 8, 1910 (*The State v. Hoerr,* 88 Kan. 573, 129 Pac. 153) ; also, that Dan Carney had been arrested and convicted of the same burglary, and that Mulcahy was also convicted and sentenced at Marysville. While this evidence was being introduced the presiding judge inquired of the prosecuting attorney whether the necessary connection would be shown, and being answered in the affirmative, overruled an objection and received the evidence. After it had been admitted, a motion to strike this evidence out was overruled. Later in the trial, the sheriff of Marshall county, a witness for the state, was permitted to testify, over the objection of the defendant, that he had arrested Henry Hoerr for the robbery of the Beattie State Bank; that he had also arrested Mulcahy for burglarizing the Waterville bank, on December 31, 1910, and also Dan Carney for the Beattie State Bank robbery; and that these men had been tried and convicted. He was also allowed to testify that he arrested the defendant on February 5, 1911, upon a charge of burglarizing the Beattie State Bank, on November 8, and that he was out on bond. The defendant objected to all this evidence, and after it was received, moved to strike it out, but the motion was overruled.

The police judge of Wymore was allowed to identify pictures of the so-called "Johnboys," which were offered in evidence. He gave their names as heretofore stated, adding, however, that of another. He was then asked, "What was the business of those men you have just enumerated?" An objection was overruled, and the witness stated that they had no business: that they stayed around Henry Hoerr's house and

·O'Donnell's saloon; that they were coming and going, and that four or five of them had been arrested.

The city marshal of Wymore testified, over defendant's objection, to the arrest of Hoerr, Mulcahy and Carney and the defendant, for the Beattie bank robbery. He was then asked, "Did the defendant, Wheeler, associate with this bunch?" and answered, "I have never seen him with them." On cross-examination he testified to the association of the persons named, at Hoerr's house, and at various saloons, and that Wheeler was in town all the time, but that he had never seen him with them or talking with them. The police judge also testified that he had never heard that the defendant was mixed up with the yeggmen.

It was held in *The State v. Hoerr*, 88 Kan. 573, 129 Pac. 153, that where a burglary had been committed by several, one being on trial, his association with others, tending to show a guilty combination, might be shown when limited to a reasonable time before the crime, and that for ·identification it might be shown that some of these associates were seen in jail afterwards. Here, however, no association of the defendant with the men shown to have been arrested and convicted of other crimes appears. On the contrary, the evidence of the police judge, and of the marshal who was apparently familiar with the haunts and habits of these men, negatives such an association. We have, then, a case where other distinct crimes have been shown, and the· conviction of other persons for such crimes, without connecting the defendant in any way before the crime was committed, either with the crimes or the criminals. In addition to this, the arrest of the defendant himself for another distinct offense, for which it was shown that others had been convicted, was admitted without evidence of any association with the perpetrators, or connection between the different offenses, in the way of preparation, concealment or otherwise. Where a conspiracy is shown, acts indica-

The State v. Wheeler.

tive of a preparation to commit the crime, or preserve
its fruits, may be shown, although they involve the
commission of another crime. (*The State v. Adams,*
20 Kan. 311.)

"As a general rule, testimony tending to show the
commission of another offense than the one charged
is not admissible; but where such offense is intimately
connected with the one charged, important proof to
establish the latter can not be excluded because it may
tend to prove that the defendant is guilty of another
offense." (*The State v. Reed,* 53 Kan. 767, 774, 37
Pac. 174.)

Testimony of a conversation with a defendant, tend-
ing to prove guilt, is admissible, although in such con-
versation he admitted the commission of other crimes,
the statements being made in the course of a single
conversation. (*The State v. Cowen,* 56 Kan. 470, 43
Pac. 687.) Any facts relevant to the issue may be given
in evidence, although they tend to prove the commis-
sion of another offense. (*The State v. Franklin,* 69
Kan. 798, 77 Pac. 588.) It has also been held that
evidence of the commission of similar offenses is ad-
missible in some cases to show guilty intent. (*The
State v. Briggs,* 74 Kan. 377, 86 Pac. 447; *The State
v. Hetrick,* 84 Kan. 157, 113 Pac. 383.)

It will be seen that this case does not fall within
the principles declared in cases where a previous con-
spiracy or subsequent concealment is shown. It does
not appear that any of the other crimes were com-
mitted in connection with or in preparation for the
Hanover burglary, and there was no evidence of any
association, combination or conspiracy to commit this
or any other crime. The evidence referred to, re-
lating to other crimes and other criminals, ought not
to have been received. (*The State v. Boyland,* 24
Kan. 186; *The State v. Hansford,* 81 Kan. 300, 106 Pac.
738; *People v. Molineux,* 168 N. Y. 264, 61 N. E. 286,

62 L. R. A. 193, and note; *Davis v. State,* 54 Neb. 177, 74 N. W. 599; 1 Wigmore on Evidence, § 305.)

The general rule is that the charge upon which a person is being tried can not be supported by proof that he committed other offenses, even of a similar nature. (*The State v. Kirby,* 62 Kan. 436, 63 Pac. 752.) This evidence does not fall within any of the recognized exceptions.

Evidence that other persons have been charged with, or convicted of, similar crimes is still further removed from relevancy.

It is not deemed proper to comment on the weight of the competent evidence against the defendant, as the case must be retried. It is sufficient to say that it was wholly circumstantial, and in view of the fact that the other crimes referred to had been committed shortly before the trial in near-by places, and that odium necessarily attached to the perpetrators, the natural effect of the erroneous testimony was to distract the attention of the jurors from the case on trial, and to arouse resentment. This irrelevant testimony was persistently offered, and forms no inconsiderable part of the record. The repeated rulings of the court indicated to the jury that it was entitled to consideration and weight in determining the issue, upon which, as appears from this record, without other circumstances to show its relevancy, it had no legitimate bearing.

Many decisions demonstrate the purpose of this court to give full effect to the rules of the code (Crim. Code, § 293) requiring that errors and irregularities not affecting substantial rights shall be disregarded. The rulings complained of here, however, do not fall within that wholesome rule. The substantial rights of the defendant respecting rules of evidence were denied to his prejudice, and for this error the judgment must be reversed.

There was a reference in the instructions to the

effect of concealment of the crime or its results.   No evidence tending to prove concealment is found in the abstracts, and, therefore, this part of the instruction ought to have been omitted.   Similar language in the instructions in the Hoerr case was commented on in the opinion in that case.

The contention of the state that a proper bill of exceptions was not allowed and signed is not sustained. At the close of the trial, time was given to transcribe the evidence, by continuing the case for judgment to the next term.   While it was not stated in the order that this was done to extend the time in which to settle a bill of exceptions beyond the term, as provided by chapter 275 of the Laws of 1901, it was doubtless so understood by the court and by the parties, and the signature of the judge to the record, including the evidence and exceptions, was a sufficient signing.   The record so made up and attested is a sufficient bill of exceptions.   To hold otherwise would be to disregard the provision of the criminal code already referred to, which applies to irregularities not affecting substantial rights, whether invoked by the state or the defendant. (See, also, Crim. Code, § 294.)

The judgment is reversed and the cause remanded with directions to grant a new trial.