No. 25,934.

THE STATE OF KANSAS, *Appellee*, v. LLOYD McREYNOLDS, *Appellant*.

SYLLABUS BY THE COURT.

HOMICIDE—*Evidence Admissible in Rebuttal.* In a prosecution for murder, evidence proper in chief as tending to prove motive and intent was offered in rebuttal. The court limited the offered evidence to rebuttal and instructed the jury that it was admitted. only for that purpose. *Held*, that the offer of the evidence in rebuttal and the ruling of the court thereon do not constitute error.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed April 11, 1925. Affirmed.

*Lee Judy*, of Kansas City, for the appellant.

*Charles B. Griffith*, attorney-general, *Malcolm McNaughton*, county attorney, and *William D. Reilly*, assistant county attorney, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Three colored men, Lloyd McReynolds, Vernon Clay and David Parker, were charged jointly with the murder of Charles Lambert, who was shot and killed June 7, 1924, on the main highway leading from Kansas City to Leavenworth. Lloyd McReynolds was tried separately and found guilty of murder in the first degree, and he has appealed. The state's theory was that the defendants were equally guilty, and the evidence on behalf of the state tended to show the following facts:

Lambert was engaged in the produce business at Leavenworth, where he bought produce, which he took to Kansas City and sold at the market. On June 6 he took four truckloads of strawberries to Kansas City. Each truck had a driver. After the boxes were unloaded, the other drivers returned to Leavenworth, but Lambert and one young man, George Kerston, stayed in Kansas City. The next morning Lambert disposed of his berries and started home soon after noon. Lambert frequently carried large sums of money on his person. McReynolds, Clay and Parker, all of whom reside in Kansas City, Kan., were over at the Kansas City, Mo., market on the morning of June 7, and in some way were informed that Lambert had about $1,600 with him and that he had no gun. The three of them plotted to hold Lambert up on his road home and take the money away from him. When Lambert and Kersten started home

they drove across the viaduct to Kansas City, Kan., and to the DeCoursey Creamery, where they loaded the truck with crates covered with tarpaulin, and started out the paved highway toward Leavenworth. The three defendants followed in McReynolds' car. At one point on the road Lambert had some trouble with a tire and stopped to fix it. The defendants, who were some little distance back of him, stopped their car and waited until Lambert went on. At the halfway house Lambert and Kersten stopped for lunch. It was then about 2:30. The three defendants drove by the place some little distance and stopped and waited until Lambert passed them. Lambert left the halfway house about three o'clock and drove on toward Leavenworth, the three defendants following him. At a place on the highway before Lansing was reached the three colored men drove their car up to the side of Lambert's truck, their plan being for one of them to climb onto the truck and to attack Lambert who was sitting on the front seat, but because the truck was so full of crates, that could not be accomplished. They drove their car to the side of Lambert's truck and told him to get over to the side of the road, and one of the colored men shot at the tire on Lambert's truck. Lambert drew a gun and fired. Several shots were exchanged, and Lambert was shot through the intestines and died the next day as a result thereof. By the time the shooting was over the car in which the colored men were riding had dropped back of the truck. Defendants then turned around and started back toward Kansas City. Instead of going directly to Kansas City, they drove off on a side road, where Clay and Parker got out of the car and went over to a little station to catch the interurban. McReynolds drove on in to Kansas City. Because of the peculiar markings of the car which was owned by McReynolds, he was located and taken into custody and made a written statement from which the other two were arrested. Upon the trial of McReynolds, Parker was a witness for the state. Clay, who had been separately tried the previous day and found guilty in the first degree, was a witness for McReynolds.

The evidence on behalf of the defendant tended to show that he had a taxi stand in Kansas City, Kan., and two taxi cars of his own, which he operated; that he was acquainted with Clay, who on the morning of June 7 came to his stand and hired McReynolds to drive him to Leavenworth, and paid him $8 for the trip. That Clay stated he wanted to go to Leavenworth to take part in a crap game

which he understood was to be played there that afternoon; that when they started to Leavenworth they met Parker, whom Clay invited to go with them. There was evidence that McReynolds had a good reputation as a law-abiding citizen; that he had never been connected or charged with being connected with any crimes or offenses, and he testified that he had no knowledge of Lambert and that he did not know Parker; had never met him until that day. McReynolds took the witness stand in his own behalf, and on cross-examination he was asked specifically about his acquaintance with Parker, and said he did not know him. He was then asked, if on the Saturday evening before the killing of Lambert he had not driven Parker and Clay in his taxi, and if the three of them had held up a street-car conductor, robbed him, and divided the money, all of which he denied.

In rebuttal the state called Parker and asked him about his acquaintance with McReynolds. He testified he had known McReynolds about three years; that McReynolds knew his name, called him both by his first name and his last name. He further testified that he and Clay rode with McReynolds on the night of June 5. He was then asked whether or not on that occasion he and Clay held up a conductor of a street car. This was objected to as not being proper rebuttal and as having been asked purely for the purpose of prejudicing defendant before the jury. The court overruled the objection, but instructed the jury that "this testimony is for the purpose of showing the acquaintance, if there was any, between this man [Parker] and McReynolds."

"Mr. McNaughton (county attorney): Not altogether that, if your honor please. I asked McReynolds the question whether or not a street-car robbery had been pulled off on the night of the 5th and he had transported the proceeds of that.

"The Court: We are not trying that case. I think it should only be considered by the jury for the purpose of determining whether or not Parker and McReynolds were acquainted, and for the purpose of showing their relation with each other, and for the purpose of showing association with each other, and for no other purpose."

The defendant objected to the testimony being considered for any purpose, for the reason that it is not proper rebuttal, and was asked only for the purpose of prejudicing the jury against the defendant. The county attorney then asked the following:

"Q. After this ride you and Clay had with McReynolds, state whether you, Clay and McReynolds had any property dealings?

"THE COURT: What night?

"Q. The night of the 5th of June?

"THE COURT: He may answer.

"MR. JUDY (attorney for defendant): I object to the question as incompetent, irrelevant and immaterial; not proving or tending to prove any issue in the case; not rebuttal; prejudicing the jury against this defendant.

"Q. Answer that question, yes or no. A. Yes, sir."

The errors complained of in the appeal relate to this rebuttal testimony, both to the questions asked by the county attorney and the rulings of the court upon the admission of the evidence, and the failure of the court to grant a new trial, which raises the same questions.

Appellant contends that, being on trial for murder of June 7, he was not called upon to defend a charge of highway robbery of June 5, and further contends that McReynolds having been asked upon the cross-examination about the holdup of June 5, and having denied that any such took place, the state was bound by his answer, and in support of his contention cites *The State v. Kirby,* 62 Kan. 436, 63 Pac. 752; *The State, ex rel., v. Stout,* 101 Kan. 600, 168 Pac. 853; *The State v. Bowers,* 108 Kan. 161, 165, 194 Pac. 650; *The State v. Hays,* 113 Kan. 588, 590, 215 Pac. 1109, and other Kansas cases therein cited.

The general rule is that on a prosecution for a particular crime, evidence which in any manner shows or tends to show that accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible. (*The State v. Raynolds,* 5 Kan. App. 515; *The State v. Kirby,* 62 Kan. 436, 63 Pac. 752; *The State v. Wheeler,* 89 Kan. 160, 130 Pac. 656.)

"While there are several well-recognized exceptions to the rule excluding evidence of other offenses, and these exceptions are founded on as much wisdom and justice as the rule itself, the rule should be strictly enforced and should not be departed from except under conditions which clearly justify such a departure." (16 C. J. 587.)

The general rule does not apply where the evidence of another crime tends directly to prove defendant guilty of the crime charged, or, as otherwise stated, evidence which is relevant to defendant's guilt is not rendered inadmissible because it proves or tends to prove him guilty of another and distinct crime. (*McFarland v. The State,* 4 Kan. 68; *The State v. Folwell,* 14 Kan. 105; *The State v. Adams,* 20 Kan. 311; *The State v. Cowen,* 56 Kan. 470, 43 Pac. 687; *The State v. Hansford,* 81 Kan. 300, 106 Pac. 738.)

Evidence of other crimes similar to that charged is relevant and admissible when it shows or tends to show a particular criminal intent which is necessary to constitute the crime charged. (*The State v. Lowe,* 6 Kan. App. 110; *The State v. Burns,* 35 Kan. 387, 11 Pac. 161.)

Evidence to show the motive pertaining to the commission of crime is relevant and admissible notwithstanding it also shows the commission ,by accused of another crime of similar or dissimilar character. (*The State v. Reed,* 53 Kan. 767, 37 Pac. 174.)

"Where the crime charged is part of a plan or system of criminal action, evidence of other crimes near to it in time and of similar character is relevant and admissible to show the knowledge and intent of the accused and that the act charged was not the result of accident or inadvertence. This rule is often applied where the crime charged is one of a series of swindles or other crimes involving a fraudulent intent for the purpose of showing this intent." (16 C. J. 591.)

The defendant having taken the witness stand, he was subject to cross-examination, within reasonable limits, upon matters affecting his credibility as a witness (*The State v. Roselli,* 109 Kan. 33, 198 Pac. 195), and his testimony was subject to rebuttal as that of any witness.

Tested by the rules of law above stated, this evidence of Parker relating to these same three persons being out in McReynolds' taxicab but two days before the offenses charged, at which time they committed a holdup or robbery and divided the money, would all have been competent in this case had it been offered in chief to the full extent that the county attorney claimed it was competent when offered in rebuttal. The proper place, however, to offer it was in chief, if it were intended to be used as far as here stated.

While the prosecution should offer in chief evidence which properly makes up its case against the defendant, it does not necessarily follow that it constitutes reversible error to offer in rebuttal evidence which should have been offered in chief (*The State v. Abrams,* 115 Kan. 520, 223 Pac. 301), the test being whether offering the evidence in rebuttal instead of in chief operates to the substantial prejudice of the defendant and prevents him from having a fair trial, and this can be determined ordinarily only by considering the facts pertaining to the specific case being considered.

But in this case the court did not permit this full evidence to go to the jury, but limited it to the sole question of the acquaintance between the defendant and the witness, and so instructed the jury

at the time. As so limited it was proper rebuttal, for the defendant had testified that he did not know Parker. In rebutting that evidence it was proper for the state to show by Parker the extent of the acquaintance, the length of time they had known each other, how intimately they had known each other, and, generally speaking, the nature of transactions they had had together, and the court was careful in his instruction to the jury given at the time the question was raised that the testimony could not be used for any other purpose.

But appellant argues that the very asking of the questions by the county attorney, and his insisting that the evidence was admissible to show that defendant participated with Parker and Clay in a highway robbery on June 5, tended to prejudice the defendant before the jury and prevent him from having a fair trial. But the questions of the county attorney on this matter were not asked with the sanction of the court. The court promptly ruled against the contention of the county attorney, and promptly instructed the jury the purpose and only purpose for which the testimony could be considered, which presents a different situation from those cases in which improper questions were propounded with the sanction of the court. Then, as we have seen, this evidence would have been competent even to the full extent the county attorney argued, had it been offered in chief, and was not testimony of a class that was not competent either in chief or in rebuttal.

The argument that the matter was entirely collateral, and that the state should have been bound by the answer of the defendant given on cross-examination, has no merit, for the reason that it is not collateral. The question of whether or not these same parties were engaged in a holdup and robbery but two days previous was not collateral to the charge that the murder in this case had been committed in an attempted holdup and robbery, but was competent evidence tending to sustain the state's position to show motive and successive crimes of the same sort.

Appellant's objection that it was not proper rebuttal is without force, for, to the extent that the court permitted the evidence, it was proper rebuttal, and to the extent that it was not proper rebuttal the court excluded it. Hence, from either view that may be taken of it, there was no error in the court's ruling.

Since this is the only error complained of, the judgment of the court below is affirmed.