### No. 26,842.

THE STATE OF KANSAS, *Appellee,* v. J. L. BAKER, *Appellant.*

#### SYLLABUS BY THE COURT.

1. HOMICIDE—*First Degree Murder—Sufficiency of Information.* In a prosecution for murder, an information which contained the preliminary basic allegations and charged that the defendant had a deadly and dangerous weapon, etc., "did then and there unlawfully, . . . shoot off and discharge said revolver at, against and upon the said Charles Lambert, thereby striking the said Charles Lambert with the said leaden bullets, and giving to and inflicting in and upon the said body and side of him, the said Charles Lambert, certain serious, dangerous, deadly and mortal wounds, with the intent on the part of said J. L. Baker, . . . him the said Charles Lambert then and there unlawfully, feloniously, willfully, maliciously, deliberately, premeditatedly, on purpose and with malice aforethought to kill and murder, all of which said J. L. Baker did in violation of the law," etc., was sufficient to charge murder in the first degree.

2. SAME—*First Degree Murder—Sufficiency of Evidence.* And further, evidence that· the defendant operated a stall in the city market in Kansas City, Mo., telephoned one Clay.with whom he was acquainted requesting

Criminal Law, 16 C. J. pp. 586 n. 98, 587 n. 2, 588 n. 5. Homicide, 30 C. J. pp. 90 n. 77, 105 n. 54, 302 n. 11, 312 n. 42, 334 n. 54; 13 R. C. L. 780; 63 L. R. A. 368; 13 R. C. L. 776. Indictment and Information, 31 C. J. pp. 708 n. 29, 717 n. 27. Mortal, 41 C. J. p. 216 n. 61.

State. v. Baker.

him to come to his stall, and upon arrival told Clay there was an opportunity to pull off a robbery, pointed out one Charles Lambert, of Leavenworth, told him that Lambert would leave for Leavenworth that afternoon, and where Clay made arrangements with two others who accompanied him in an automobile, following Lambert and overtaking him some two miles south of Lansing, where in an attempt to commit the robbery Lambert was mortally wounded and died the next day, was sufficient to sustain a conviction of murder in the first degree.

3. CRIMINAL LAW—*Trial—Variance Between Information and Opening Statement—Necessity of Pointing Out Variance.* And where under the facts narrated in the opinion the defendant had exercised nine challenges in the selection of the jury, and the county attorney in his opening statement told the jury among other things, that it was the state's contention that the defendant was guilty of murder in the first degree, it was not error for the trial court to overrule defendant's motion to discharge because of variance between the information and opening statement where defendant failed to specify the point of variance.

4. HOMICIDE—*Evidence—Instructions.* Alleged errors of admission and rejection of evidence, of the giving and refusal to give instructions considered and not sustained.

5. SAME—*Trial Generally..* Various other alleged errors considered and held not to require a reversal.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed February 12, 1927. Affirmed.

*Roy R. Hubbard,* of Kansas City, for the appellant.

*Charles B. Griffith,* attorney-general, *Malcolm McNaughton,* county attorney, and *William D. Reilly,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The defendant was convicted of murder in the first degree and appeals.

The facts are substantially these: The defendant for some time prior to June 7, 1924, had been engaged in the commission business in Kansas City, Mo. He also carried on a business of making bonds for criminals at various police stations in Kansas City, and did some pawnbroker business though he held no pawnbroker's license. The chief testimony against him on the murder charge was by one Vernon Clay, a negro convict. Clay testified that on the morning of June 7, 1924, defendant called him by telephone and asked him to come to his stall at the city market. Upon his arrival there, defendant told him there was an opportunity to pull off a robbery. Defendant pointed out one Charles Lambert, of Leavenworth, who had come to Kansas City with a truck, and advised him that Lambert

would leave for Leavenworth that afternoon; that Clay then made arrangements with two other negroes to accompany him; that the three waited for Lambert to depart; followed him in an automobile from Kansas City, Mo., over the intercity viaduct to Kansas City, Kan., and from thence on the road to Leavenworth; that around half-past three or four o'clock, when some two miles south of Lansing, they drove up behind Lambert and ordered him over to the side of the road. At that time one of Clay's companions fired a shot at Lambert's truck. Lambert returned the fire, but was mortally wounded and died the next day. Clay and one of his companions boarded an interurban car and returned to Kansas City. The third drove back with the car. The three negroes were apprehended. One turned state's evidence and took a sentence of second-degree murder; the other two are serving time for first-degree murder. (See *State v. McReynolds,* 118 Kan. 356, 234 Pac. 975.) Clay testified to various other robberies he had committed through the instigation and aid of the defendant, and that they had divided the spoils.

The defendant contends that the court erred in permitting the county attorney to make an opening statement inferring that the defendant committed murder when he was charged only with felonious assault; also in overruling his motion to discharge when there was a variance between the allegations of the information and the county attorney's opening statement.

The information contained the usual preliminary basic allegations and that—

"One J. L. Baker . . . did then and there unlawfully, feloniously, willfully, maliciously, deliberately, premeditatedly, on purpose and with malice aforethought in and upon one Charles Lambert, then and there being, make an assault with intent to kill him, the said Charles Lambert, and the said J. L. Baker and Vernon Clay, Lloyd McReynolds and David Parker, with a deadly and dangerous weapon, to wit: etc. . . . did then and there unlawfully, etc., . . . shoot off and discharge said revolver at, against and upon the said Charles Lambert, thereby striking the said Charles Lambert with said leaden bullets and giving to and inflicting in and upon the body and side of the said Charles Lambert, certain serious, dangerous and deadly and mortal wounds with the intent on the part of the said J. L. Baker, Vernon Clay, Lloyd McReynolds and David Parker in and upon the said Charles Lambert then and there unlawfully, feloniously, willfully, maliciously, deliberately, premeditatedly, on purpose and with malice aforethought to kill and murder."

In concluding his opening statement, the county attorney said:

"If the statements I have made to you are true and this man did lay out the plan whereby these boys were to follow Lambert and afterwards overtake

State v. Baker.

him and rob him, and that he acted generally in the scheme and abetted, advised and counseled Clay and the man Parker in the killing of Lambert, then our contention is that Baker is guilty of murder in the first degree."

Counsel for defendant: "At this time the defendant waives his opening statement and moves the court to discharge the defendant upon the information filed in this case and in view of the opening statement in support of that information that has just been made by the county attorney."

County attorney: "I do not remember whether I said Mr. Lambert was killed in Leavenworth county or not. He was killed near Wenzel's place in Leavenworth county, and I want to amend my statement to that effect."

The court: "The motion to discharge is overruled."

From which it appears that the defendant did not specifically direct the court's attention to the point he was urging in his motion to discharge. Some time later in the course of the trial (the second or third day) defendant's counsel said:

"At this time, I wish to call attention to the fact that the information in this case charges assault with intent to kill."

The court: "I am aware of that fact."

While the record is not entirely clear, we understand the sufficiency of the information as to the charge of murder was not raised until the second or third day of the trial. Also, that the defendant exercised nine challenges, which indicated that at the time of the impaneling of the jury he proceeded upon the theory that the information did charge the crime of murder in the first degree. The state asserts that in spite of the fact that the common-law rule required an allegation to the effect that the deceased died as a result of the wound inflicted, the allegations of the information as they stood charged the offense of murder in the first degree. It has been held that:

"The particularity of the common-law system or rules of pleading does not prevail here. As a general rule, it is sufficient if the offense is charged in the language of the statute, and even the statutory words defining the offense need not be strictly pursued, but others conveying the same meaning may be used." (*State v. McGaffin*, 36 Kan. 315, 319, 13 Pac. 560.)

Also that it is not necessary to state that the wounds were mortal, or that the wounds received resulted in death.

"While the information does not in so many words allege that the wounds were inflicted by the shooting, or that they were mortal and resulted in death, it does allege distinctly that Foley was killed and murdered by the defendant at a fixed place and upon a certain time, by means that are described, and in language that can leave no doubt as to the character of the wounds inflicted or the cause of the death. We think the information contains the essential averments of a charge of murder." (*State v. Kirby*, 62 Kan. 436, 440, 63 Pac. 752.)

The information alleged the "giving to and inflicting in and upon the body and side of him, the said Charles Lambert, certain serious, deadly, dangerous and mortal wounds." To say that one inflicted upon another a mortal wound is to say that he killed him. A mortal wound is a death-producing wound. The words "murder" and "mortal" are both derived from the Latin "mors." "Mortal means destructive to life, causing or occasioning death; terminating life; exposing to or deserving death; deadly, as a mortal wound; mortal sin; of or pertaining to the time of death. (Webster.) In *State v. Truskett*, 85 Kan. 804, 118 Pac. 104, it was said:

"Where an information for murder plainly charges that the defendant shot and killed the deceased with a pistol loaded with powder and ball, an allegation that a mortal wound was inflicted thereby is unnecessary." (Syl.)

And in the opinion the court continued:

"The information was direct and certain, and the offense was clearly charged as required by the criminal code. [Crim. Code, sections 104, 109.] The criticism is that it was not charged in the information that a mortal wound was inflicted upon the deceased. As the information, in ample form, charged that the appellant shot and killed the deceased with a pistol, it seems a wound was inevitable—a shot that kills, in the ordinary course of events, must wound. It is true that in many of the time-honored forms of indictment the infliction of a mortal wound is set out, and it may be that some courts have held the omission of such an allegation fatal, but our statute provides simple rules which fully protect the rights of the accused without needlessly encumbering the record with useless repetition and verbiage. A person who is plainly charged with the willful, deliberate and premeditated murder by shooting another with a revolver cannot fail to understand the nature of the charge whereof he is accused." (p. 805.)

Both state and defendant suggest that a clause alleging "of which said . . . mortal wounds said Charles Lambert died," which was contained in the complaint through an inadvertence was omitted from the information, and the state, while conceding that the information was subject to criticism, maintains that it sufficiently charged the crime of murder. The defendant argues that he was misled, and proceeded upon the theory that the information charged only assault with intent to kill, and that the trial court proceeded upon the same theory and went so far as to prepare instructions in conformity with such theory. The trial court on due consideration, and we think rightly, concluded that the information sufficiently charged the crime of murder, and so instructed the jury. The record discloses no prejudice to the defendant resulting therefrom.

State v. Baker.

The defendant contends that "the court erred in allowing known and admitted perjury evidence to be considered by the jury." This goes to the evidence of the witness Clay. Clay had previously been tried for his part in the murder. At his trial he interposed a defense to the effect that he was riding in an automobile with McReynolds and Parker, bound to Leavenworth to indulge in a crap game. His testimony in support of that position was not believed by the jury. He was found guilty of murder in the first degree. It does not necessarily follow, of course, that the mere fact that Clay was found guilty in his own case is proof positive of the fact that he was telling the truth in this case. However, the jury believed his testimony that Lambert was killed in an attempt at highway robbery, and after all it was a question for the jury.

"Where two persons are jointly charged with arson and upon a separate trial one of them is offered as a witness against the other, the testimony of such witness, although an accomplice, is competent, and his uncorroborated evidence, if otherwise sufficient, will sustain a verdict of guilty, but the credit to be given to the testimony of an accomplice is a matter for the determination of the jury." (*State v. McDonald,* 107 Kan. 568, 193 Pac. 179, syl. ¶ 1.)

Defendant contends the court erred in allowing his character to be attacked before he had placed it in issue. The court permitted the state to show that the defendant, Baker, had at different times given the witness, Clay, revolvers and at different times Clay and defendant had been associated in various holdups and robberies in Kansas City, Mo., and had divided the proceeds of such robberies. The court repeatedly stated, upon objections being interposed by counsel for defense, that such testimony was proper for the purpose of showing the relation existing between the parties at the time of the commission of the offense charged. It was not improper. In *State v. McReynolds,* 118 Kan. 356, 359, 234 Pac. 975, it was said in the opinion:

"The general rule is that on a prosecution for a particular crime, evidence which in any manner shows or tends to show that accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible." (See, also, *State v. Raynolds,* 5 Kan. App. 515; *State v. Kirby,* 62 Kan. 436, 63 Pac. 752; *State v. Wheeler,* 89 Kan. 160, 130 Pac. 656.)

"While there are several well recognized exceptions to the rule excluding evidence of other offenses and these exceptions are founded on as much wisdom and justice as the rule itself, the rule should be strictly enforced, and should not be departed from except under conditions which clearly justify

such a departure. The general rule does not apply where the evidence of another crime tends directly to prove defendant's guilt of the crime charged. Evidence which is relevant to defendant's guilt is not rendered inadmissible because it proves or tends to prove him guilty of another and distinct crime." (16 C. J. 587. See, also, *McFarland v. State,* 4 Kan. 68; *State v. Folwell,* 14 Kan. 105; *State v. Adams,* 20 Kan. 311; *State v. Cowen,* 56 Kan. 470, 43 Pac. 687; *State v. Hansford,* 81 Kan. 300, 106 Pac. 738.)

It is contended that the evidence of conspiracy was insufficient; that the testimony of Vernon Clay viewed in its most favorable light was that the decedent Lambert was to be robbed by "strong-arm" methods, whereas the robbery was attempted by the use of firearms; also that while a person without the state, consummating or committing an offense by an agent or means within the state, is liable to be punished by the laws thereof (R. S. 62-402) that it is elementary that the acts of an agent bind his principal only when done within the scope of the agent's employment. The contention cannot be sustained. The evidence was sufficient to sustain the conviction. (See *State v. Wolkow,* 110 Kan. 722, 205 Pac. 639, and cases cited. R. S. 21-401, R. S. 62-1016.)

Other contentions that the court erred in depriving defendant of his constitutional rights in the admission and rejection of evidence, in the giving and refusing of instructions, refusal to grant a new trial, to set aside the verdict and in passing an alleged unlawful sentence. have all been considered but cannot be sustained.

The judgment is affirmed.