No. 25,062.

THE STATE OF KANSAS, *Appellee*, v. JESSE ABRAMS, *Appellant*.

SYLLABUS BY THE COURT.

1. HOMICIDE—*Evidence in Chief Offered in Rebuttal—Not Reversible Error.* The admission in a criminal case of evidence for the prosecution in rebuttal, some of which might have been introduced in chief, is held not to be a ground of reversal.

2. SAME—*Wife's Evidence Concerning Grounds of Her Estrangement From Her Husband — Competent in Rebuttal of Her Husband's Testimony.* Where the defendant in a murder case had testified that his separation from his wife was caused by her relations with the man whom he killed, her evidence in rebuttal concerning the grounds of her estrangement from her husband is held to have been either proper or nonprejudicial.

3. SAME—*Self-defense—Competent for State in Rebuttal to Show that Deceased Was Unarmed.* Where one on trial for murder testifies that he fired the fatal shot because he saw the man whom he killed in the apparent act of attempting to draw a weapon, it is competent for the state in rebuttal to show that the person killed was unarmed, the evidence being admissible as throwing light on the probability of the defendant's story.

4. SAME—*Dying Declarations—Oral Proof Competent.* Where the victim of a homicide has made a statement in circumstances making it admissible as

The State v. Abrams.

a dying declaration the fact that it was embodied in a writing which has been lost does not prevent a witness who heard it from testifying to what was said to and by the dying man, regardless of the contents of the writing.

5. SAME—*No Request for Instruction Concerning Dying Declarations—No Error if Not Given.* Where a dying declaration has been admitted in a murder trial and the jury are told that they are the exclusive judges of the facts proved, the weight of the evidence and the credibility of the witnesses, the omission to instruct concerning the effect to be given the evidence relating to the dying declaration is not error, in the absence of any request for such an instruction.

6. SAME — *Manslaughter in Fourth Degree — Instructions.* The definition of manslaughter in the fourth degree as "the involuntary killing of another by a weapon, or by means neither cruel nor unusual, in the heat of passion," having been held not to apply where the death was accomplished by the use of a dangerous weapon, no occasion arises for giving an instruction under it where the killing was done with a pistol shot.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed February 9, 1924. Affirmed.

*David F. Carson,* and *C. A. Miller,* both of Kansas City, for the appellant.

*Justus N. Baird, Harry Hayward,* and *David E. Henderson,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: Jesse Abrams appeals from a conviction of murder in the second degree. He admitted the killing (of Will Brown) and relied upon evidence tending to show that he acted in self-defense. He gave testimony tending to show these facts:

He had had some difficulty with his wife. She sued him for a divorce. Later they lived together for seven or eight months but were again separated. Two or three weeks before the latter separation he became suspicious of her relations with Brown. After this separation, but before a divorce which the defendant later obtained with her consent, he told Brown to stay away from his house because he did not want any trouble with him. One morning two weeks before his final separation from his wife he turned back after having started to his work and went to his house—a block and a half away—for a pistol, which he had a permit to carry. As he got to the front door Brown came out of the bedroom, followed by the defendant's wife. The defendant asked them what they meant. Brown put his hand in his hip pocket as if to draw a weapon and the defendant dashed into his room and got his

pistol. When he came out Brown was gone. On the day of the homicide the defendant got on a street car, in accordance with his custom, to get some change from the conductor. He saw Brown, who was sitting next to the window, with the defendant's divorced wife, get up out of the seat with his hand in his hip pocket. He had been warned to be on his guard against Brown and knew of threats he had made; being frightened he took no chances; but shot him.

1. In rebuttal the prosecution called the defendant's divorced wife as a witness for the first time. Complaint is made on the ground that she should have been used, if at all, in making the state's case in chief. The code of criminal procedure provides that after the defendant has introduced his evidence the parties may offer only rebuttal testimony "unless the court, for good reason, in furtherance of justice, permit them to offer evidence upon the original case." (R. S. 62-1438, subdiv. 3.) The admission in rebuttal of evidence which ought to have been introduced earlier is not a ground of reversal unless the defendant is thereby hampered in presenting his case, for instance, where he is denied an opportunity to meet the new evidence. (*The State v. Gibbs*, 105 Kan. 52, 181 Pac. 569.) We do not think any substantial prejudice resulted from the testimony of his former wife being introduced in rebuttal instead of as a part of the original case. In the defendant's brief it is suggested that he did not have time or opportunity to meet the evidence given in rebuttal, but no showing appears to have been made to that effect. In behalf of the prosecution it is said that the witness was not used in chief because diligent efforts to find her had been unsuccessful at the time the state rested.

2. Special objection is made to the testimony of this witness concerning the causes of her separation from her husband and of the divorce. It is urged that the matter at issue was not whether Brown was in fact the cause of the estrangement between the defendant and his wife, but whether the defendant upon reasonable grounds believed so. The defendant testified that his separation from his wife was caused by Brown's relations with her. His version of his domestic troubles having been given it was competent for the state in rebuttal to disprove his assertions where they were material; and even where their materiality was doubtful it does not appear that serious prejudice could possibly have resulted save in one instance. She testified that before the first

separation the defendant undertook to cash his pay check without her knowledge, and in a resulting controversy he struck her over the head, drew his gun and said he would kill her if she struck him back. We do not think there is a sufficient probability of this evidence having affected the verdict to warrant a reversal, assuming it to have been irrelevant.

3. Specific objection is also made to the testimony of the same witness that Brown was not armed when he was shot, the argument being that this was of no consequence, the important question being whether the defendant with sufficient reason believed that he was attempting to draw a weapon. The evidence that Brown was unarmed we regard as having some tendency to contradict the defendant's story that he was reaching as if for a weapon when he was shot. The statement that Brown, just before the shooting, had put his right hand to his hip in the apparent act of drawing a weapon from his pocket would have been more probable if it had turned out there was a weapon there; the fact being to the contrary, the statement, although possibly true, was less persuasive than it would otherwise have been. Evidence of the actual situation was admissible as bearing upon the likelihood of the defendant's version of the circumstances attending the homicide being true. (*Quinn v. The State*, 1 Ala. App. 116; *People v. Sehorn*, 116 Cal. 503; *Moore v. State*, 96 Tenn. 209; *Williams v. The State*, 30 Tex. App. 429; *Wilson v. The State*, 92 Tex. Cr. Rep. 118.)

4. While Brown was in the hospital an assistant county attorney visited him for the purpose of getting a dying declaration. He testified that a written statement had been made, which was shown to have been lost. He then gave an account of what had taken place and what Brown had said. To this testimony a number of objections were made. It is urged that the contents of the lost writing were not admissible because it had not been signed by Brown. The witness, however, did not attempt to say what the written statement contained, but told from his own knowledge what had taken place. Objection is also made to his having told of statements by Brown not shown to have been included in the writing, and of things said by other persons. It was competent for him, without regard to anything that had been written, to tell what Brown had said and also what had been said to him, so far as it threw light on his mental condition and expectation of death. The fact that Brown and a bystander cried, if not admissible on this ground, was at all events nonprejudicial. The witness testified that

he asked Brown whether he and the defendant had ever had any previous trouble and that Brown answered that they had never had a cross word. Whether this was within the proper scope of a dying declaration need not be determined, as the abstract shows no objection to it.

5. Complaint is made because the court gave no instruction specifically relating to the effect to be given the evidence concerning the dying declaration. It is error to require a jury to accept the court's decision that the person making the statement knew that he was about to die. (*The State v. Reed*, 53 Kan. 767, 37 Pac. 174.) There is high authority that an instruction is also erroneous which tells the jury they must disregard the dying declaration unless they find that fact to exist:

"After a dying declaration, or any other evidence, has been admitted, the *weight* to be given to it is a matter exclusively for the jury. They may believe it or may not believe it; but, so far as they do or do not, their judgment is not controlled by rules of law. Therefore, though they themselves do not suppose the declarant to have been conscious of death, they may still believe the statement; conversely, though they do suppose him to have been thus conscious, they may still not believe the statement to be true. . . . It is therefore erroneous for the judge, after once admitting the declaration, to instruct the jury that they *must* reject the declaration, or exclude it from consideration, if the legal requirement as to consciousness of death does not in their opinion exist. No doubt they *may* reject it, on this ground or on any other, but they are not to be expected to follow a definition of law intended only for the judge." (3 Wigmore on Evidence, 2d ed., § 1451.)

Here the jury were told that they were the exclusive judges of the facts proved, the weight of the evidence and the credibility of the witnesses. No further instruction having been asked concerning the dying declaration, we hold the omission of the court to mention it affords no ground for reversal.

6. The jury were instructed that a conviction might be had of manslaughter in the third degree under the statute reading:

"The killing of another in the heat of passion, without design to effect death, by a dangerous weapon, in any case except wherein the killing of another was justifiable or excusable, shall be deemed manslaughter in the third degree." (R. S. 21-413.)

Complaint is made of the refusal to give also an instruction under this section:

"The involuntary killing of another by a weapon, or by means neither cruel nor unusual, in the heat of passion, in any cases other than justifiable homicide, shall be deemed manslaughter in the fourth degree." (R. S. 21-419.)

The difference between the two sections quoted, in such a situation as that here presented, has been held to lie in the use of the word "dangerous" to qualify "weapon" in the first one and not in the second, so that the definition of fourth degree murder applies only where the death is caused by a weapon which is not dangerous. (*The State v. Bloom*, 91 Kan. 156, 136 Pac. 951.) There can be no doubt that a pistol by the shooting of which a homicide is committed is a dangerous weapon as a matter of law. The instruction was therefore properly refused.

The judgment is affirmed.