No. 40,675
THE STATE OF KANSAS, *Appellee,* v. W. T. BEAN, *Appellant.*
(317 P. 2d 480)

Opinion filed November 9, 1957.

*Abraham Weinlood, Bill R. Cole, Kenneth F. Ehling, D. Stewart Oswalt* and *John H. Shaffer,* all of Hutchinson, were on the briefs for appellant.

*Granville M. Bush,* County Attorney, of Lyons, argued the cause, and *John Anderson, Jr.,* Attorney General, of Topeka, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: W. T. Bean was charged in the district court of Rice County on an information containing two counts: the first count charged him with the theft of 65 sacks of cement worth more than $20; the second count charged him with cheating and defrauding a Mrs. Minnie Patterson, Lyons, Kansas, an elderly woman, by means of false pretense. Following trial and a verdict of guilty on both counts he appealed to this court, which reversed the judgment of conviction, and directed that he be granted a new trial (*State v. Bean,* 179 Kan. 373, 295 P. 2d 600). At the second trial, which commenced January 21, 1957, the defendant was tried only on the first count of the information charging grand larceny, which, following a jury trial, again resulted in a verdict of guilty. The defendant has appealed from the orders of the district court overruling his motions for a new trial; to set aside the verdict; and, to set aside the judgment and sentence of the district court.

Bean was employed by Mrs. Patterson to construct a house in Lyons and to repair and remodel other houses owned by her in that city. In order to complete the work it was necessary to procure cement and he ordered a total of 200 sacks from the Lyons Lumber Company in two lots of 100 sacks each. The cement was delivered at different times and stored in different garages at the work areas on the Patterson properties. The cement was charged to Mrs. Patterson and paid for by a representative of her estate following her death. After the completion of the Patterson job, the defendant was charged with having directed some of his workmen to transport 65 sacks of unused cement to his home in Hutchinson where it was placed in his garage and later used by him in the construction of a tool house on his premises.

Claudie Healey was one of the chief witnesses for the state, and he testified that he was an employee of Bean on the Patterson job and that the defendant directed him to take his (Bean's) ½ ton Dodge pick-up truck and haul 65 sacks of cement from the Patterson job to the defendant's home in Hutchinson. The pick-up truck was secondhand having a model A bed without sideboards; it did not have dual tires or overload springs, and the cement sacks, weighing 96 pounds each, were stacked in rows across the bed. Healey hauled the cement in two loads: 30 sacks on the first load and 35 on the second. On the first trip he was accompanied by his twelve-year-old son Johnnie Healey, and another of defendant's employees, a Bonnie Harper; on the second trip, two other workmen accompanied him. The cement was placed in the defendant's garage. Later Healey and Harper assisted the defendant in building a tool house with the cement hauled from Mrs. Patterson's premises. On two different occasions the defendant asked Healey to falsify his testimony about hauling the cement to Hutchinson.

The defendant did not testify in his own behalf. Ernest Muller, a witness for the defendant, testified that the cement used to construct the tool house was sack cement purchased from a lumber company in Hutchinson and that only 15 sacks of cement were hauled from Mrs. Patterson's "old garage" to the defendant's home where it was unloaded on the south side of his home, but that cement had been damaged by rain, had become hard in the sacks and was unusable.

Seledy Davis and J. W. Lewis, testifying on behalf of the defendant, stated they had a conversation with Claudie Healey during the

first trial in which he said he had better go home and coach his son because he was going to take him to the trial at Lyons the next day and that he was "posting him," and that, "If they don't stick that guy I won't get no $200.00." also that Healey stated the "prosecutor" was going to pay him the $200.00. In rebuttal, the state called Claudie Healey and he denied he had been promised $200 to testify, or that he had any conversation with anyone concerning payment for testifying. On cross-examination he admitted the county attorney had told him he would lose no pay while attending court and that he would be paid the equivalent of his wages; that he expected to get $8.80 a day as he was then earning that amount, and his travel expenses; that he was paid 75¢ per hour for being in attendance for two days as a witness at the first trial following which "he and the county attorney went around the court house and got two different checks which he cashed at the court house" and that he got both checks at the same office. The clerk of the court testified that the stautory witness fees and mileage for all state witnesses for both trials was still unpaid.

The state called Bonnie Harper as a rebuttal witness. An objection was made to his testifying because his name was not endorsed on the information as a witness for the state. The county attorney made no request to endorse Harper's name, and upon his statement that Harper was called as a rebuttal witness, the district court overruled the objection. Harper testified he presently resided in Texas, and when asked the question whether he had ever helped haul any cement from Lyons to Hutchinson for the defendant, an objection was made on the ground that it was improper rebuttal testimony and related solely to the state's case in chief. The objection was overruled and the witness testified he helped haul approximately 65 sacks in two loads, which came from two different garages at the Patterson place, contrary to the testimony of Ernest Muller that fifteen sacks of damaged cement was taken from one garage; that he helped take the cement to Hutchinson where it was stored in Bean's garage, contrary to the testimony of Muller that it was placed on the south side of Bean's house; that the cement used in constructing the tool house came from Bean's garage and was the same cement he had helped move from Lyons to Hutchinson, contrary to the testimony of Muller and the defendant's wife, Mrs. Bean. The district court held that Harper's testimony was proper rebuttal, and stated, "Ordinarily it would have been introduced in chief but

there has been testimony on the part of the defendant's witnesses contradicting these matters so I am admitting it as rebuttal testimony."

The defendant first contends it was error to permit Harper to testify without his name being endorsed on the information, and that his testimony was clearly improper rebuttal and should not have been admitted in evidence. The point is not well taken. While Harper's name was not endorsed as a witness on the information, he testified in rebuttal, and his testimony, in the main, contradicted new facts and circumstances brought forth by evidence on behalf of the defendant. In the course of his testimony he testified to some facts which might have been proper in the state's case in chief, however, it was impossible to separate that evidence from evidence which was proper rebuttal. Moreover, facts testified to by him which might have been proper in the state's case in chief, were, at most, merely cumulative of other testimony on behalf of the state. The rule is that evidence offered in rebuttal, which might have been part of the state's case in chief, is not improperly received when it tends to contradict some new fact or circumstance brought forth by the defendant's testimony (*State v. McGlade,* 165 Kan. 425, 428, 196 P. 2d 173). In *State v. Beam,* 175 Kan. 814, 267 P. 2d 509, this court, in answer to the contention there made that certain evidence was not competent because it was a part of the state's case in chief and therefore improper rebuttal, said:

". . . There are two short answers to these contentions. The first is that under the confronting circumstances this evidence was properly admitted on rebuttal for the purpose of refuting defendant's claim. . . . The second is, that under our decisions (see *The State v. Gibbs,* 105 Kan. 52, 181 Pac. 569; *The State v. Abrams,* 115 Kan. 520, 223 Pac. 301; *The State v. McReynolds,* 118 Kan. 356, 360, 234 Pac. 975; *State v. Haines,* 128 Kan. 475, 477, 278 Pac. 767), the admission of such evidence, even though it be assumed it pertained to the state's case in chief, did not prevent the defendant from having a fair trial and affords no sound ground for reversal of the judgment. . . ." (l. c. 816, 817.)

While it is the duty of the county attorney to endorse on the information the names of all witnesses known to him and he should do so, we do not think it fatal to the prosecution nor prejudicial to the defendant that Harper's name was not endorsed since he was properly called as a rebuttal witness. In *State v. Tassell,* 87 Kan. 861, 126 Pac. 1090, it was said:

". . . Under the statute it is the duty of the county attorney, of course, to make the indorsement, so that the defendant may make inquiry concerning

the standing and credibility of the witnesses who are to testify against him. The requirement, however, is not so mandatory or essential that noncompliance with it necessarily invalidates the information or defeats the prosecution. . . ." (l. c. 863.)

In *State v. Wood,* 118 Kan. 58, 233 Pac. 1029, it was held:

"On the trial of a criminal action it is not error to permit a witness whose name is not indorsed on the information to testify in rebuttal." (Syl. ¶ 1.)

Other decisions in support of this rule are *State v. Medlicott,* 9 Kan. 257, 262, 282; *State v. Scott,* 1 Kan. App. 748, 752; *State v. Morris,* 131 Kan. 282, 283, 291 Pac. 742; and, *State v. Zeilinger,* 147 Kan. 707, 709, 78 P. 2d 845. Under all the facts and circumstances presented by this record, it was not error to permit Harper to testify as a rebuttal witness, and his doing so did not result in prejudice to the defendant.

The defendant argues that the county attorney was guilty of misconduct which deprived him of a fair trial. The contention involves two witnesses who testified for the state: Claudie Healey and Bonnie Harper. With respect to Harper, the contention is that the county attorney forwarded him a ticket and expense money to come from Texas; that when Harper arrived in Lyons the day before the trial he contacted the county attorney and later spent that night with Claudie Healey in Hutchinson; that contrary to the district court's order that all witnesses, except the defendant, be excluded from the courtroom during the trial and remain with the sheriff until called, Harper was kept by the sheriff in another place in the court house and his presence was unknown to the defendant until he was called as a rebuttal witness.

The record shows that Harper, when contacted by the county attorney, was a day laborer and without sufficient funds for transportation to Lyons and had no money with which to pay expenses. In 1951 the legislature enacted the reciprocal Uniform Act (Ch. 354, Laws 1951, G. S. 1955 Supp. 62-2801, *et seq.*) providing for the compulsory attendance of a witness for the state in a criminal prosecution who resides in another state, upon payment in advance of .10¢ a mile and $5 for each day he is required to travel, and although Texas, where Harper resided, had also adopted the provisions of that act (Vernon's Ann. C. C. P. Art. 486a, *et seq.*) the county attorney was not required to follow its procedures in arranging for Harper's voluntary return to Kansas. The provisions of the Uniform Act are not mandatory and need not be followed where a wit-

ness living in another state agrees to voluntarily return to the place of trial. In such a situation, we know of no public policy which precludes a county attorney from advancing funds for a witness' necessary transportation and expenses to the place of trial, upon being satisfied that such witness is financially unable to pay the same. Here, the county attorney might have followed the provisions of the Uniform Act, but he was not required to do so. The processes of this state are not so ineffective that a county attorney, in arranging for the voluntary attendance of a witness such as Harper, may not advance necessary transportation and expenses to secure his attendance in lieu of envoking the provisions of the Uniform Act.

During the hearing of the motion for a new trial counsel stipulated that although the defendant did not know of Harper's presence during the trial, he was not in the courtroom during the course of the trial in violation of the court's order excluding witnesses, until he was called as a rebuttal witness. The fact that the sheriff may have kept Harper separate from the other witnesses, thus preventing the defendant from knowing of his presence, did not in itself prevent the defendant from having a fair trial, or induce Harper to be untruthful in his testimony.

Continuing with the defendant's contention that the county attorney's arrangement with the witnesses deprived him of a fair trial, he asserts the county attorney's agreement to pay Healey's expenses and the equivalent of his wages during the time he attended both trials was contrary to public policy, resulted in prejudice to him, and deprived him of a fair trial.

The payment to Healey the equivalent of his wages while he was a witness at the trials was fully explored by the defendant on cross-examination. It is clear Healey understood the purpose and basis for the payments and when asked about them, made full disclosure. That testimony tended to bear directly upon his credibility as a witness. The jury heard him testify, observed his demeanor, and was the sole judge of his credibility and the weight to be given his testimony. It is evident the arrangement did not affect the jury's verdict. Under the facts and circumstances disclosed by this record we cannot say the arrangement between the county attorney and Healey, a material witness for the state, whose sole livelihood depended upon his being employed daily, was inducive of perjury, resulted in the perversion of justice, or the corruption of our courts, or was prejudicial to the defendant.

The defendant lastly contends that he was not guilty of larceny of the cement. He argues that while the cement was charged to Mrs. Patterson and owned by her, he had the custody and control of it at all times as her agent, and that if any crime was committed, it was the crime of embezzlement as defined in G. S. 1949, 21-545. The point is not well taken. One of the leading and most recent cases of this court concerning this question is *State v. James*, 157 Kan. 703, 143 P. 2d 642, where the court made a thorough analysis of the distinction between larceny and embezzlement, and quoted with approval from 125 A. L. R. 371, as follows:

" 'Where personal property belonging to the master or employer is feloniously converted by a servant or employee having at the time a mere custody of the property, as distinguished from the legal possession thereof, the offense is generally held to be larceny.' "

In the opinion it was said:

". . . where the accused has the mere custody of the property and the legal possession is still in the owner, if the wrongdoer makes away with the property with intent to deprive the owner of it permanently his offense is larceny; whereas if lawful possession is conferred on the wrongdoer as where property is entrusted to a bailee or trustee, a later conversion to his own use by the wrongdoer is embezzlement—unless at the time possession is conferred on him he already has formed the wicked intent to convert it to his own use, in which case the offense is classified as larceny. . . ." (l. c. 706).

The record before us suggests that the defendant was an independent contractor and not an employee of Mrs. Patterson. Be that as it may, it is clear that his custody of the cement and his use of it in constructing, repairing and remodeling her houses never amounted to legal possession, and when those jobs were completed any right to the temporary custody or use of the cement terminated. All the necessary elements of larceny were present in this case, and the district court did not err in its instructions to the jury.

Other objections are made, but they are obviously immaterial and do not warrant discussion.

The evidence fully supports the conviction, and our review of the record convinces us the defendant was not deprived of a fair trial.

The judgment is affirmed.