No. 58,661

STATE OF KANSAS, *Appellee*, v. BILLY JACK HAYES, *Appellant*

(720 P.2d 1049)

Opinion filed June 13, 1986.

*Jessica R. Kunen*, deputy appellate defender argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with her on the brief for appellant.

*Sue Carpenter*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Gene M. Olander*, district attorney, were with her on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Billy Jack Hayes appeals his convictions of one count of rape (K.S.A. 1985 Supp. 21-3502) and one count of aggravated criminal sodomy (K.S.A. 1985 Supp. 21-3506). The sole issue on appeal relates to the admission of certain rebuttal testimony presented by the State.

There is no issue as to the sufficiency of the evidence and as the defense was one of alibi the facts, for the most part, are not disputed. The victim, Ms. D., spent the evening hours of April 21, 1984, socializing with friends at Moby's Dock, a Topeka tavern. During the evening she was introduced to the appellant, Billy Jack Hayes. At midnight, as the bar was closing, Ms. D. realized that the friend she had come with was no longer in the tavern. She then went to the Anchor Club, a private club adjoining the tavern, to look for her friend. After spending nearly one hour socializing in the club, she concluded that her friend must

have gone home and she decided to walk to his house. As she left the club, appellant offered to walk with her to her destination. Ms. D. testified that after walking several blocks appellant grabbed her from behind and dragged her into an alley, where he raped and sodomized her. The victim's screams drew the attention of a passing pedestrian, Ogden New, whose intervention prompted the attacker to flee. The victim underwent a rape kit examination at Stormont-Vail Hospital in which the results of all tests were negative.

At trial the victim identified Billy Jack Hayes as her attacker, and New identified him as the man he had seen in the alley on the night of the attack. New testified that he viewed appellant engaging in intercourse and anal sodomy with the victim. The bartender and part owner of the tavern and club testified he was working the night of April 21, 1984; that he knew appellant, who was a member of the club; and that appellant was in the tavern until closing time when he then went to the club and had at least one drink. The tavern closed at midnight.

Hayes' defense was alibi. While he acknowledged being in Moby's Dock on the night in question, he testified he departed for Manhattan around nine o'clock in the evening and spent the entire night in Manhattan, not arriving back in Topeka until early afternoon on April 22. His story was corroborated at trial by testimony from his brother, his girlfriend and her sister. The principal issues at trial were identification and whether the State met its burden in proving the crimes had actually occurred.

The State presented evidence from the emergency room nurse, Debra Heston, who had examined the victim and administered the rape kit process. Heston testified as to her findings on examining the victim and that, in the course of her emergency room experience, she had administered about twenty rape kit examinations. During cross-examination defense counsel elicited testimony regarding the absence of trauma to the vaginal and rectal walls of the victim. Defense counsel also elicited the professional opinion of Nurse Heston as to whether, during a forcible rape, abrasions to the vaginal or rectal area would normally occur.

During its case the defense called Dr. Frederick C. Baker, a pathologist. Dr. Baker testified as to his experience in the examination of women who allegedly had been sexually assaulted.

The doctor testified that, in his opinion, any time there is forcible rape or forcible anal sodomy, it will be accompanied by trauma, such as bruising, tearing or scratching to the vaginal or rectal area or walls of the victim.

To counter the testimony of Dr. Baker, the State presented rebuttal evidence from Dr. Richard Geis and Joan Hamilton. Hamilton, a former assistant district attorney in Shawnee County, Kansas, had previously served as a volunteer rape counselor. She testified that during her career as an assistant district attorney and rape counselor she was present in the emergency examination room when approximately 150 to 160 alleged rape victims were examined and that out of all those occasions she had personally observed visual evidence of external trauma to the vaginal or rectal area in only 6 cases. It is the testimony of Joan Hamilton that led to this appeal.

Appellant raises four issues on appeal, all dealing with Joan Hamilton's testimony at trial. Hayes claims that, i) rebuttal testimony was improper under the circumstances, ii) Hamilton was not an expert on the subject of her testimony, iii) Hamilton's testimony was irrelevant and, iv) Hamilton's testimony did not comply with the requirements of K.S.A. 60-456(b)(1), (2).

The first issue is whether rebuttal testimony was proper in this case. Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears its discretion has been abused. *State v. Richard*, 235 Kan. 355, Syl. ¶ 1, 681 P.2d 612 (1984).

At trial appellant, in cross-examination, sought and obtained the professional opinion of the examining nurse relating to the evidence of trauma in rape and/or sodomy cases. The State's case in chief was limited to the specific circumstances and observations surrounding the alleged rape and sodomy of Ms. D. In his

case, the appellant then called Dr. Baker for his professional opinion as to the presence of trauma in forcible rape cases. Thus it was not improper to allow the State to present evidence in rebuttal to Dr. Baker, which it did through the testimony of its expert, Dr. Geis, and the testimony of Joan Hamilton. We find no abuse of discretion in allowing the State to present testimony in rebuttal to that of Dr. Baker, and the testimony of Dr. Geis was clearly admissible.

The remaining issues are directed specifically to the admission of the testimony of Joan Hamilton. Appellant asserts error in allowing Hamilton to testify as an *expert witness*. We agree. Although Hamilton has had extensive experience as a prosecuting attorney, a rape counselor, and, at the present time, as a member of the Kansas Adult Authority, none of that qualifies her as an expert in the medical field which would justify opinion evidence on medical matters. In *State v. Washington*, 229 Kan. 47, 622 P.2d 986 (1981), this Court was faced with a similar set of circumstances. The defendant was charged and convicted of first-degree murder and rape. Dr. Baker, who testified in this case, testified for the defense as to his experience and opinion relating to the presence of trauma in rape cases. In rebuttal the State presented the testimony of Joan Hamilton, which was similar to her testimony in this case. In discussing an attack upon Hamilton's testimony, this Court stated:

"Defendant next challenges the admission of rebuttal testimony by Joan Hamilton, as assistant district attorney. Hamilton testified in response to the testimony of Dr. Frederick Baker, who stated that of the 100 rape victims he had examined, all bona fide victims had at least some trauma to the sex organs. He stated that the physical injury to the sex organs was fairly severe in homicide cases because of the overall violence of such rapes. He also stated that where the rape is committed, as a result of fear of the victim, there is *usually* some minor damage to the sex organs, such as small lacerations or scratches, because of spasms caused by fear and lack of lubrication. In his opinion, based on his own experiences, Baker testified that he did not feel Cummings was the victim of a forcible rape. In rebuttal, the State called Joan Hamilton. Hamilton, in her capacity as an assistant district attorney, handles rape cases, and is, additionally, a rape counselor. She has been involved in 250 rape cases. She testified that, from her observations, only 6 of the 160 victims which she personally observed displayed visual evidence of damage or injury.

"Defendant challenges this rebuttal testimony, claiming that Hamilton was incompetent to give expert medical testimony. Hamilton testified to her own observations based on prior experience, and could properly be considered an expert under K.S.A. 60-456(b)(1). There was no abuse of the trial court discretion

in allowing her to testify as an expert from her own observation. Defendant also challenges the rebuttal testimony as beyond the scope of the testimony of Dr. Baker offered by the State. Although she did not testify to, or purport to testify to knowledge of trauma to the sex organs of the rape victims in cases with which she was familiar, her testimony did, to some extent, counter the evidence presented by defendant, and we cannot say it was not proper rebuttal testimony. Even Dr. Baker did not testify that, where a rape is committed as a result of fear, *all* victims have damage to the sex organs." (Emphasis in original.) 229 Kan. at 59-60.

We are of the opinion that our statement in *Washington* to the effect that Hamilton "could properly be considered an expert under K.S.A. 60-456(b)(1)," which was prefaced by reference to "expert medical testimony" went too far and should be clarified. In *Washington*, as in the present case, Hamilton did not voice a medical opinion as to the probability of trauma in forcible rape cases. Her testimony was, and properly must be, limited to her actual physical observations and may not be extended to the area of expert opinion evidence on the medical probability of trauma. However, it does not necessarily follow that, in a proper case, Hamilton is not qualified under K.S.A. 60-456(a) to testify as to her actual observations. Here, Dr. Baker testified that, in his opinion, trauma would most probably, if not always, be found through careful medical examination of a forcible rape victim. We know of no rule of law which requires a rebuttal witness to have comparable or greater qualifications than those of the witness being rebutted. Hamilton's testimony was relevant to the limited extent that it consisted of her nonprofessional observations of external evidence of trauma of certain rape victims being examined by others. She did not testify that she medically examined these victims or that she reached any medical opinion as to whether they suffered trauma. Her testimony was limited to her visual observations, from some unknown vantage point, of the victims in the emergency examination rooms. Her testimony, given as a mere lay observer, had some relevance as rebuttal to the testimony of Dr. Baker and the court did not abuse its discretion in admitting the testimony. The presentation of such testimony, however, should be carefully monitored by the court to avoid the impression that Hamilton is in any way an expert witness. Additionally, the propriety of such testimony is questionable in view of the conflicts of interest which will undoubtedly arise in the future if Hamilton remains in her present position. To the extent herein set forth, we modify our earlier statements in *Washington* as to Hamilton's qualifications.

While it appears that the testimony of Hamilton was admitted by the court in reliance upon our statements in *Washington*, there is no showing that she was presented to the jury as an expert on medical matters. Under such circumstances, we cannot say that the trial court abused its discretion in the admission of Hamilton's testimony even though it was considered under what we now deem to be an inappropriate section of the statute.

The judgment is affirmed.

MILLER, J., dissenting: I respectfully dissent from the conclusion reached by the majority in this case, and I adhere to the dissent of Justice Holmes, which I joined, in *State v. Washington*, 229 Kan. 47, 63, 622 P.2d 986 (1981). The court's present opinion invites the rebuttal of expert medical testimony by lay witnesses who do not have the factual information necessary to properly rebut that opinion testimony.

Here, Nurse Heston testified on direct examination that she had performed "probably up to twenty" rape kit examinations. She stated that she had never seen tears or lacerations to the genital areas of the victims, and she did not find that fact surprising. On cross-examination, she said that she found no tears, lacerations or abrasions of the victim's vagina.

The defense called Dr. Frederick C. Baker, a pathologist who had examined some thirty victims of sexual assault. He expressed the opinion that forcible rape or forcible sodomy will be accompanied by trauma to the vaginal or rectal area of the victim. In rebuttal, the State quite properly presented the testimony of Dr. Dick Allen Geis. He had examined some twenty to twenty-five rape victims and had found injury to the vaginal area of less than half. Both physicians and the nurse had, admittedly, rather limited experience in the area.

To counter this split of professional opinion, the State presented the testimony of Joan Hamilton. Both as a rape counselor and later as an assistant district attorney, she had been present in the hospital room and had observed not twenty or thirty but 150 to 160 rape kit examinations, and she had observed trauma to the vaginal area of the victim only six times, and then on very young or very old victims. Though on cross-examination she acknowledged that she had no medical training, that she would not look for the same things that a nurse would look for and would not

look for the same type of trauma that a doctor would look for, and that she never made an actual examination of the vaginal and rectal areas of the victims, the damage was done. The coup de grace had been administered. In only six out of 160 cases is there trauma! That was the effect of her testimony. The only purpose in calling her was to establish that "fact" in the minds of the jurors.

I do not mean that lay testimony can never be used to counter the opinions of experts. Many examples come to mind: A physician testifies that he found scratches and bruises on the arms and face; lay persons present, and having the opportunity to observe, saw no scratches or bruises. The mechanic testifies that the brakes on a vehicle worked perfectly; lay persons who tested the brake pedal found that it went clear to the floor and there was no brake pressure. Many other illustrations may be made, but in all such situations the lay persons had an opportunity to observe that which is apparent, even to the untrained. Here, however, we have a nurse and two physicians who made internal as well as external examinations and testified as to their findings. A non-professional person who was present, but who did not make an actual examination of the specific body areas, has no factual foundation and no scientific or educational background upon which to base testimony offered for the sole purpose of refuting or rebutting that of the trained examiners.

Following the rationale of the dissent in *Washington*, I would hold that the admission of this testimony was prejudicial error.

SCHROEDER, C.J., joins the foregoing dissenting opinion.