No. 59,120

STATE OF KANSAS, *Appellee*, v. LAWRENCE M. WILLIS, *Appellant*.

(731 P.2d 287)

Opinion filed January 16, 1987.

*Jessica Kunen*, deputy appellate defender, argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with her on the brief for appellant.

*Sue Carpenter*, assistant district attorney, argued the cause, and *Gene M. Olander*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: Lawrence M. Willis appeals his jury trial conviction of aggravated criminal sodomy (K.S.A. 1985 Supp. 21-3506).

For his first issue defendant contends the trial court erred in permitting the State to introduce certain rebuttal testimony.

The State's case in chief may be summarized as follows. On

March 11, 1986, a residence at 425 Clay Street in Topeka was being occupied by Scott Lundblade and Ms. G. Unless otherwise indicated, the times of the occurrence of events of that day are approximate. At 8:30 a.m. Lundblade heard a knock on the door of his residence. When he reached the door, he saw defendant walking away. Lundblade was well acquainted with defendant. At 9:30 a.m. a child for whom Ms. G. babysat arrived at the residence. At 9:55 a.m. Lundblade left for a visit to the home of his parents located two blocks away. At 10:10 a.m. defendant returned to the Clay Street residence looking for Lundblade. Defendant had frequently been a guest in the residence and Ms. G. permitted him to wait inside for Lundblade's anticipated return. After 20 minutes defendant departed. About 30 minutes later, defendant returned and was again permitted by Ms. G. to wait inside for Lundblade. Defendant attacked Ms. G., striking and choking her and threatening to kill her if she resisted. Defendant then anally sodomized Ms. G. and left. Ms. G. dressed and walked to the home of Lundblade's parents. Scott Lundblade was not present but Ms. G. told his parents what had happened to her. Mrs. Lundblade called the police. An officer was dispatched at precisely 11:07 a.m. to interview the victim. Photographic and scientific evidence was admitted showing bruising sustained by Ms. G. and that anal sodomy had occurred.

Defendant took the stand and denied ever being at the Clay Street residence on the morning of March 11, 1986. He then produced alibi witnesses. One witness testified defendant was at Sixth and Buchanan at 11:10 a.m. and that the two of them walked from there to a drive-in located at Sixth and Lincoln, where they left job applications.

The principal issue at trial at this point was identity. Defendant had testified he was not at the Clay residence at all on the morning of March 11—thereby contradicting the testimony of both Ms. G. and Scott Lundblade. As rebuttal witnesses, the State called two neighbors of the victim who had seen defendant go to the Clay residence at approximately 8:00 a.m. and 10:00 a.m. on the morning in question.

Defendant contends this was improper rebuttal testimony as it failed to establish some new fact, circumstance, or opinion not already presented in the State's case in chief. In support thereof, defendant cites *State v. Childers*, 222 Kan. 32, 563 P.2d 999

(1977); *State v. Nirschl,* 208 Kan. 111, 490 P.2d 917 (1971); *State v. Bean,* 181 Kan. 1044, 317 P.2d 480 (1957).

In *State v. Childers,* 222 Kan. 32, a rebuttal witness in a murder trial testified to the path of two bullets recovered from a house located across the street from the defendant's house. The testimony rebutted defendant's testimony that he was firing at the ground and not at the deceased. In upholding admission of the rebuttal testimony, this court said:

"Defendant further argues the testimony in question was improper rebuttal in that it could have been offered in the state's case in chief. On this point in *State v. Nirschl,* 208 Kan. 111, 490 P.2d 917, we said:
'With respect to the propriety of the rebuttal testimony, this court has held that evidence which could have been admitted in the case in chief but which was not, may be admitted in rebuttal to contradict some new fact or circumstance brought forth in the defendant's evidence. That is the case here. The state could not attack the credibility of the defendant's testimony until he had taken the stand. Once that issue was raised, it properly could be rebutted. (citing cases.)' (p. 117.)
Even though the state was aware that defendant would probably testify that he fired into the ground, the state is not required to anticipate what defense might be offered at trial and to offer evidence in its case in chief to meet all probable facets of the defense, '. . . If so, the state would be required to elicit testimony in its case in chief to cover every possible contingency. . . .' (*State v. Phippen,* 207 Kan. 224, 230, 485 P.2d 336.)" 222 Kan. at 43-44.

In *State v. Bean,* 181 Kan. 1044, this court rejected the contention that certain testimony was improper rebuttal. The *Bean* court found that the testimony did contradict new facts and circumstances brought forth on behalf of the defendant. As to the contention that the testimony was merely cumulative, this court said:

"The rule is that evidence offered in rebuttal, which might have been part of the state's case in chief, is not improperly received when it tends to contradict some new fact or circumstance brought forth by the defendant's testimony (*State v. McGlade,* 165 Kan. 425, 428, 196 P.2d 173). In *State v. Beam,* 175 Kan. 814, 267 P.2d 509, this court, in answer to the contention there made that certain evidence was not competent because it was a part of the state's case in chief and therefore improper rebuttal, said:
" '. . . There are two short answers to these contentions. The first is that under the confronting circumstances this evidence was properly admitted on rebuttal for the purpose of refuting defendant's claim. . . . The second is, that under our decisions (see *The State v. Gibbs,* 105 Kan. 52, 181 Pac. 569; *The State v. Abrams,* 115 Kan. 520, 223 Pac. 301; *The State v. McReynolds,* 118 Kan. 356, 360, 234 Pac. 975; *State v. Haines,* 128 Kan. 475, 477, 278 Pac. 767), the admission of such evidence, even though it be assumed it pertained to the state's case in chief, did not prevent the defendant from having a fair trial and affords no sound ground for reversal of the judgment. . . .' (l.c. 816, 817.)" 181 Kan. at 1048.

Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts witnesses on the opposite side, but also corroborates previous testimony. The use and extent of rebuttal rests in the sound discretion of the trial court and its ruling will not be reversed unless it appears its discretion has been abused. *State v. Hayes,* 239 Kan. 443, Syl. ¶ 1, 720 P.2d 1049 (1986); *State v. Richard,* 235 Kan. 355, Syl. ¶ 1, 681 P.2d 612 (1984); *State v. Taylor,* 231 Kan. 171, 175, 642 P.2d 989 (1982); *State v. Weigel,* 228 Kan. 194, Syl. ¶ 9, 612 P.2d 636 (1980).

The rebuttal witnesses did not offer testimony that the crime had occurred—only that defendant was at the Clay residence twice on the morning of the crime. The defendant denied in his testimony ever being at the crime scene on the morning in question. There being no notice of the alibi defense filed, as provided for in K.S.A. 22-3218, the State was not required to anticipate defendant's testimony in this respect and call these witnesses in its case in chief. We find no abuse of trial court discretion in the admission of rebuttal testimony.

For his second issue defendant challenges the giving of a *Warren* instruction on eyewitness identification. Defendant contends that the instruction given was inaccurate and misleading. Defendant made timely objection to the giving of the instruction. However, the fact defendant objected to the giving of a *Warren*-type instruction does not, of itself, preclude the giving of such an instruction when proper.

Instruction No. 6, the contested instruction, was taken from PIK Crim. 2d 52.20 as follows:

"The law places the burden upon the state to identify the defendant. The law does not require the defendant to prove he has been wrongly identified. In weighing the reliability of eyewitness identification testimony you first should determine whether any of the following factors existed and if so the extent to which they would affect accuracy of identification by an eyewitness. Factors you may consider are:

"1. The opportunity the witness had to observe. This includes any physical condition which could affect the ability of the witness to observe, the length of the time of observation, and any limitations on observation like an obstruction or poor lighting.

"2. The emotional state of the witness at the time including that which might be caused by the use of a weapon or a threat of violence.

"3. Whether the witness had observed the defendant on earlier occasions.

"4. Whether a significant amount of time elapsed between the crime charged and any later identification.

"5. Whether the witness ever failed to identify the defendant or made any inconsistent identification.

"6. The degree of certainty demonstrated by the witness at the time of any identification of the accused.

"7. Whether there are any other circumstances that may have affected the accuracy of the eyewitness identification."

Defendant contends the instruction did not advise the jury how to apply the seven factors and improperly omitted other factors which should have been included.

In *State v. Warren*, 230 Kan. 385, 635 P.2d 1236 (1981), this court discussed in detail the problems inherent in eyewitness identification evidence. The court explained the need for a cautionary instruction:

"[U]ntil recently the appellate courts of America have not given proper recognition to the potential for injustice involved in the area of eyewitness testimony. The picture, however, is changing and the more recent decisions recognize the serious nature of the problem and, like the courts of Great Britain, have taken the position that the answer is an appropriate cautionary instruction on the subject. The pioneer case is *United States v. Telfaire*, 469 F.2d 552 (D.C. Cir. 1972). In *Telfaire*, the United States Court of Appeals for the District of Columbia Circuit adopted a model special instruction on eyewitness identification to be used in future cases in the circuit. The court in *Telfaire* recognized the need for guidelines to be given by the trial court to the jury to be used by the jury in weighing the credibility of eyewitness testimony. . . .

"There have been several cases before the Supreme Court of Kansas in which the issue has been raised that the trial court erred in refusing to give a special instruction to the jury on eyewitness testimony. In several cases, this court rejected the need for an instruction modeled after the *Telfaire* instruction. See *State v. Porter*, 223 Kan. 114, 574 P.2d 187 (1977); *State v. Robertson*, 221 Kan. 409, 559 P.2d 810 (1977); *State v. Wilson*, 221 Kan. 92, 558 P.2d 141 (1976); *State v. Ponds and Garrett*, 218 Kan. 416, 419, 543 P.2d 967 (1975). The question was before us most recently in *State v. Mack*, 228 Kan. 83, 612 P.2d 158 (1980). In *Mack*, we rejected the need for a special instruction modeled after the *Telfaire* instruction, stating that the general instruction given adequately covered the subject of the instruction requested and refused. We note that PIK Criminal does not comment on the need for such an instruction and no pattern instruction is provided." 230 Kan. at 396-97.

In *Warren* we concluded:

"We have considered these Kansas cases along with cases from other jurisdictions and have concluded that *in any criminal action in which eyewitness identification is a critical part of the prosecution's case and there is a serious question about the reliability of the identification, a cautionary instruction should be given advising the jury as to the factors to be considered in weighing the credibility of the eyewitness identification testimony.* Any statements to the contrary in any of our previous cases cited above are hereby disapproved. In reaching this conclusion, we have considered the fact that trial courts are often required to determine the *admissibility* of eyewitness testimony where issues of unreliability are raised. As pointed out by Chief Justice Schroeder in *State v. Ponds,* 227 Kan. 627, in testing the reliability of identification testimony, the five factors mentioned in *Neil v. Biggers* [, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972),] should be considered by the trial court. If these five factors should be considered in determining the *admissibility* of the testimony, it would seem even more appropriate to require the jury to consider the same factors in weighing the *credibility* of the eyewitness identification testimony. Otherwise the jury might reasonably conclude that the admission of the evidence by the trial court vouched for its reliability. We think it clear that, in order to prevent potential injustice, some standards must be provided the jury so that the credibility of eyewitness identification testimony can be intelligently and fairly weighed. The giving of such an instruction will take only a couple of minutes in trial time and will be well worth it, if some future injustices can be avoided." (Emphasis supplied.) 230 Kan. at 397.

The *Neil v. Biggers,* 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972), factors urged by the *Warren* court to be given as a cautionary instruction are:

"(1) [T]he opportunity of the witness to view the defendant at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." 230 Kan. at 390.

PIK Crim. 2d 52.20, given herein, was developed as a direct result of the *Warren* decision. We conclude this instruction adequately expresses the holding of *Warren.*

The seven factors contained in PIK Crim. 2d 52.20 are self-explanatory, within the scope of ordinary laymen's knowledge and judgment, and do not require expert testimony for application. The same cannot be said for the factors which defendant contends should have been added to the instruction. These include transracial identification ("own-race effect"), unconscious transference, after-acquired experience, and the "feedback" factor. These terms are beyond the scope of ordinary laymen's knowl-

edge and experience and would require expert testimony to be applied by a jury.

In *State v. Warren*, the many problems involved in permitting expert testimony on the subject of eyewitness testimony were discussed at length. We then concluded:

"After considering these cases and the literature on the subject, we have concluded that requiring trial courts to admit this type of expert evidence is not the answer to the problem. We believe that the problem can be alleviated by a proper cautionary instruction to the jury which sets forth the factors to be considered in evaluating eyewitness testimony. Such an instruction, coupled with vigorous cross-examination and persuasive argument by defense counsel dealing realistically with the shortcomings and trouble spots of the identification process, should protect the rights of the defendant and at the same time enable the courts to avoid the problems involved in the admission of expert testimony on this subject." 230 Kan. at 395.

We conclude that the trial court's refusal to expand the seven factors contained in PIK Crim. 2d 52.20 was not error.

For his third issue defendant contends that the giving of an instruction on the credibility of the witnesses was erroneous. The jury was instructed in Instruction No. 5 as follows:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use that knowledge and experience which you possess in common with persons in general in regard to the matter about which a witness has testified. You may take into account ability and opportunity of the witness to observe and know the things about which the witness has testified; his/her memory, manner, and conduct while testifying; any interest he/she may have in the result of this trial; and the reasonableness of the testimony given, considered in the light of all the evidence in this case.

"The weight of the evidence on any issue is not determined by the number of witnesses but by how reasonable, persuasive, and satisfying the evidence is to you.

"If you find that any witness has willfully testified falsely concerning any material matter, you have a right to distrust the testimony of that witness in other matters and you may reject all or part of the testimony of that witness, or you may give it such weight as you think it deserves. You should not reject any testimony without cause."

No objection to the instruction was made at trial. A party may not assign as error the giving or failure to give an instruction unless he or she objects to the instruction before the jury retires to consider its verdict, stating clearly the grounds for the objection. K.S.A. 22-3414(3). *State v. Peck*, 237 Kan. 756, 764, 703 P.2d 781 (1985); *State v. Price*, 233 Kan. 706, 711, 664 P.2d 869 (1983); *State v. Korbel*, 231 Kan. 657, 661, 647 P.2d 1301 (1982); *State v.*

*Franz*, 9 Kan. App. 2d 319, 320, 676 P.2d 157 (1984). Absent such an objection, an appellate court may reverse only if the instruction is clearly erroneous. *State v. Korbel*, 231 Kan. at 661.

PIK Crim. 2d 52.09 (and PIK Civ. 2d 2.20) relative to credibility of witnesses provide:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

With the exception of PIK Crim. 2d 52.20 relative to eyewitness identification, the trend has been to eliminate instructions which focus on the credibility of certain testimony. See comments following PIK Crim. 2d 52.10 (defendant as a witness); PIK Crim. 2d 52.11 (number of witnesses); PIK Crim. 2d 52.14 (expert witness); PIK Crim. 2d 52.15 (impeachment); PIK Crim. 2d 52.17 (confession); and PIK Crim. 2d 52.19 (alibi). Whereas it would certainly have been the better practice to give an instruction along the lines of PIK Crim. 2d 52.09, we cannot conclude the giving of Instruction No. 5 was clearly erroneous.

For his final issue defendant contends the evidence was insufficient to sustain the conviction of aggravated criminal sodomy.

It is well settled that, in a criminal action, when a defendant challenges the sufficiency of the evidence to support a conviction, the scope of appellate review is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Baker*, 239 Kan. 403, Syl. ¶ 4, 720 P.2d 1112 (1986); *State v. Bell*, 239 Kan. 229, Syl. ¶ 9, 718 P.2d 628 (1986); *State v. Van Cleave*, 239 Kan. 117, Syl. ¶ 3, 716 P.2d 580 (1986).

There were many inconsistencies in the evidence relative to the precise times defendant came to and left the Clay Street residence on the three trips. One time is certain—the crime was reported to the police shortly before 11:07 a.m. (when the officer was dispatched). After the crime, the victim dressed herself, dressed the toddler with whom she was babysitting, walked two blocks to the home of Lundblade's parents with the child, and related her story to the parents. The crime and the departure of

Ms. G's assailant could well have been determined by the jury to have occurred prior to 11:00 a.m. An alibi witness placed the defendant at Sixth and Buchanan, near the crime scene, at 11:10 a.m. Four witnesses (two of whom were well acquainted with the defendant) placed defendant at the crime scene the morning of the crime. The testimony of Ms. G. (the victim), if believed, satisfied all the elements of aggravated criminal sodomy. We conclude that the evidence was sufficient for a rational factfinder to have found the defendant guilty beyond a reasonable doubt.

The judgment is affirmed.

ALLEGRUCCI, J., not participating.